## HORVATH *v.* LANGEL.

1. BROKERS—FIDUCIARY RELATION—FULL DISCLOSURE.

Real estate broker, in acting as agent for plaintiffs whom he knew to be unable to read and write English with facility and that they, of necessity, relied upon him because he could read and speak their own language as well as English, stood in such a fiduciary relation to them as to require his making full disclosure of all material facts and circumstances in relation to transaction in which he purported to represent them and to act in their interest.

2. PRINCIPAL AND AGENT—FIDELITY.

Fidelity upon part of agent to his principal is the essential basis of agency.

3. MORTGAGES—BROKERS—FRAUD—EQUITY.

Plaintiff mortgagors, unable to read and write English with facility *held*, entitled to cancellation of mortgage and note because of fraud incident to procurement by defendant mortgagee in payment for commissions in exchange of real estate, where defendant and another real estate broker concealed fact that contract of exchange required other party to pay some cash, gave fictitious valuation to plaintiffs' property in order to increase commission and some commission was illegal because neither broker was licensed to act as such in Michigan where some of the real estate was located (2 Comp. Laws 1929, § 9806 *et seq.*).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted April 23, 1936. (Docket No. 73, Calendar No. 38,759.) Decided June 16, 1936.

Bill by Louis Horvath and wife against Alex S. Langel for cancellation of a note and mortgage on the ground of fraud and for other relief. Cross-bill by defendant for foreclosure, an accounting and

other relief. Decree for plaintiffs. Defendant appeals. Affirmed.

*Carney & Carney,* for plaintiffs.

*Jackson, Fitzgerald & Dalm,* for defendant.

Potter, J. November 29, 1932, plaintiffs filed their bill of complaint against defendant to cancel on the ground of fraud a promissory note and a real estate mortgage securing the same on real estate in Kalamazoo county in the sum of $1,764, and to enjoin the transfer of the note and mortgage. Defendant filed an answer and cross-bill in which he denied all the material allegations of fraud in plaintiffs' bill of complaint, and by a cross-bill asked an accounting, foreclosure of the real estate mortgage, and decree for deficiency against plaintiffs. July 15, 1933, plaintiffs filed an answer to the cross-bill. The trial court decreed cancellation of the note and mortgage on the ground of fraud and released plaintiffs from liability for real estate commissions to defendant. From this decree, defendant appeals.

Plaintiffs were the owners of a block in South Bend, Indiana, consisting of two stores on the first floor and four apartments on the second floor. It was heavily incumbered, taxes were unpaid, and plaintiffs were desirous of disposing of their interest therein. Both plaintiffs are Hungarians and do not readily read and write the English language, and speak it indifferently. Defendant is of Hungarian descent, familiar with the Hungarian language, acquainted with plaintiffs who relied implicitly upon him. Defendant was a real estate agent in South Bend, and one Rufus W. Smith was also a real estate agent there. Smith seems to have operated more

or less in southern Michigan without being a licensed real estate dealer under the law of this State. Smith met plaintiffs in 1931 and plaintiff Louis Horvath told him about wanting to dispose of the South Bend real estate, and Mrs. Horvath told Smith if they (plaintiffs) made any deal *it would have to be made through defendant.* In the winter of 1932, Smith met one Henderson who owned a farm in Schoolcraft township, Kalamazoo county, and Smith, seeking to make a deal, showed Henderson plaintiffs' buildings. About this time, Smith entered the office of defendant and subsequently he and defendant acted together in relation to this transaction, Smith preparing all the papers therein.

March 28, 1932, a preliminary contract was signed by Henderson and plaintiffs whereby Henderson agreed to exchange his farm in Schoolcraft township, Kalamazoo county, of 232 acres, subject to a mortgage of $5,000, for plaintiffs' real estate and pay in addition $1,100 in cash or bankable paper. Plaintiffs' real estate was to be taken subject to an incumbrance of $19,300. There were other agreements in relation to rents, occupancy by plaintiffs of an apartment then occupied by them in their building, taxes, interest on outstanding incumbrances, insurance, and the marketability of the title of the respective pieces of real estate. March 29, 1932, defendant procured from plaintiffs another contract practically identical with that executed by Henderson and plaintiffs the day before, except that it omitted therefrom the provision "The party of the first part further agrees to give $1,100 in cash or bankable paper." Defendant admits he explained the first contract to plaintiffs but concealed from them any knowledge of the fact that Henderson was to pay $1,100. Plaintiffs testify they did

not know anything about this $1,100 until the trial. This second contract signed by plaintiffs at the request of the defendant was never presented to or signed by Henderson who apparently had no knowledge of its contents.

April 5, 1932, defendant secured from plaintiffs an agreement that Smith should receive for compensation any moneys received from Henderson by defendant over and above the proposition rendered by plaintiffs on March 29, 1932, to defendant, that being the contract which omitted any reference to the $1,100 to be paid by Henderson.

March 31, 1932, defendant procured a deed from plaintiffs to be held by him in escrow and to be delivered to Henderson upon the completion of the deal in accordance with the proposition of March 29, 1932.

The deal was closed at the bank in Marcellus in April, 1932. Plaintiffs were represented by defendant and were not present at the time it was closed. Adjustments were made of rents, taxes, interest upon outstanding incumbrances, and there was found to be due to plaintiffs $400 out of the $1,100 provided to be paid by Henderson. This money of plaintiffs was kept by defendant or paid to Smith.

April 8, 1932, defendant secured from plaintiffs a signature to a promissory note and mortgage for $1,764, the proceeds of which was split between defendant and Smith who officed with him and cooperated with him in the consummation of this transaction. A valuation was placed upon plaintiffs' real estate of $45,000 for the purpose of figuring defendant's commissions. The trial court found this valuation was fictitious, fanciful and imaginative, and evidently made only for the purpose of computing an excessive real estate commission.

The principles underlying cases of this kind are elementary. Defendant knew plaintiffs were ignorant of the English language and unable to read and write English with facility, and that they, of necessity, had to rely upon him who not only could speak their language, but could read and speak English. Defendant stood in a fiduciary relation to plaintiffs. He was their agent and was bound to exercise honesty and good faith in his transactions with them, and to make a full and fair disclosure to them of all the material facts and circumstances in relation to this transaction in which he purported to represent them and to act in their interest. Fidelity upon the part of the agent to his principal is the essential basis of agency. This rule was disregarded by defendant. The trial court said:

"Though it may not be found on this record that defendant because of this single transaction in Michigan, individually and independently engaged in the business of a broker in Michigan without license in violation of our penal statute,* yet it does appear that his confederate, Smith, during the period covered by this transaction, was, by reason of this and numerous other transactions, so engaged in the business of broker in Michigan in violation of our statute.

"That portion of the consideration of the note and mortgage claimed by defendant as commission, namely, $1,550, was, as above shown, considerably in excess of any commission to which he could have been justly and equitably entitled, and was earned, if at all, by the combined efforts of defendant and Smith acting together in an unconscionable undertaking, and in violation of a Michigan penal statute all the while by Smith at least.

* See 2 Comp. Laws 1929, § 9806 *et seq.*—REPORTER.

"Defendant should not be permitted in equity to reap the benefits of a fraudulent, highly unconscionable undertaking and an unlawful occupation of his confederate, Smith, in this State.

"We may not be justified in finding affirmatively that plaintiffs unknowingly signed the note and mortgage, but there is no escape from the conclusion that the whole transaction was tainted with fraud, and that the plaintiffs were deceived thereby. * * *

"Defendant is not entitled to the aid of equity in the premises for the following reasons:

"1. Because of the wholly unconscionable conduct of himself and Smith in the premises.

"2. Because that portion of the consideration claimed for commission is unjust and inequitable in amount.

"3. Because the consideration of the note and mortgage springs from the unlawful conduct of Smith in this State while acting for and in behalf of defendant with defendant's full knowledge and consent.

"4. Because a considerable portion of the alleged consideration of $1,764 is not in any event legally or equitably due and owing defendant.

"If defendant is not entitled to a foreclosure, then plaintiffs should be relieved of the cloud upon their title and any liability in the premises. Defendant in his cross-bill has selected his forum and he must abide the result."

We find no reason for disagreeing with the conclusions of the trial court.

Decree affirmed, with costs.

North, C. J., and Fead, Wiest, Butzel, Bushnell, Edward M. Sharpe, and Toy, JJ., concurred.