29 Mich. App. 91 (1970)
185 N.W.2d 99
CITIZENS MUTUAL INSURANCE
v.
NATIONWIDE INSURANCE
Docket No. 7339.
Michigan Court of Appeals.
Decided December 10, 1970.
Hillman, Baxter & Hammond, for plaintiff.
Cholette, Perkins & Buchanan (Sherman H. Cone, of counsel), for defendant.
Before: HOLBROOK, P.J., and R.B. BURNS and J.J. KELLEY, JR.,[*] JJ.
HOLBROOK, P.J.
Citizens Mutual Insurance Company, plaintiff herein, excess insurance carrier of the assureds, Stanley Mathews and Leon Mathews, brought this suit against Nationwide Insurance Company, primary insurance carrier of the same assureds, for $3,000, claiming that it was required to pay a disproportionate portion of the settlement of four suits growing out of a single accident involving the assureds.
The facts as claimed by the parties are lengthy and complicated. We state them as briefly as we can including those pertinent to a decision.
On April 23, 1960, a head-on collision involving a pickup truck driven by Stanley Mathews and owned by Leon C. Mathews and an automobile owned and driven by Israel Nedeau occurred on Nedeau's side of the highway, causing personal injuries not only to Mr. Nedeau, but also his wife, Helen, and *93 their children Tommy and Patricia, who were passengers in the Nedeau vehicle. Suits were commenced in 1962 by each of the Nedeaus by Mr. Reamon of the law firm of Marcus, McCroskey, Finnean, Libner & Reamon against Stanley and Leon Mathews. Nationwide, the primary insurance carrier for the Mathews with coverage limits of $10,000 for each person and $20,000 for each accident, employed Mr. Gruel of the law firm of Cholette, Perkins & Buchanan of Grand Rapids to represent the Mathews. The Nedeaus' attorney was informed of the excess insurance coverage of plaintiff herein, which was disclosed in this suit as being $25,000 for one person and $50,000 for one accident. The plaintiff, after notice, retained separate counsel, Mr. Richard Baxter, of the law firm of Luyendyk, Hainer, Hillman, Karr & Dutcher to handle the matter on its behalf. Plaintiff as well as defendant had a duty to protect the insured, but Mr. Baxter concluded "that it would be best to not file an appearance of counsel and have two firms representing the defendant, particularly a defendant that is, let's say, low in the scale of economic life. It looks too much like a lot of insurance companies to a jury if the case is ever tried, and depending on who the attorney is handling it for the primary carrier, if there is confidence in the attorney handling it for the primary carrier, more is delegated or relied upon by that attorney, and we had, of course, the utmost confidence in Mr. Gruel, and it was then concluded, as in usual fashion, because we get into these positions from time to time, that Mr. Gruel remain as attorney of record and we would remain not as attorneys of record, and he would participate of record and we would, of course, remain close to the situation".
It is undisputed that all the attorneys having any part in the original damage suit and the instant *94 case enjoy a very high reputation as capable attorneys.
Mr. Gruel by letter dated July 26, 1964, informed Mr. Baxter that the four cases had been consolidated for trial. Trial was initially set for November 9, 1964, but subsequently adjourned to December 21, 1964. In November Mr. Reamon made an offer to settle the cases for $30,000, viz.: Mr. Nedeau, $7,500, Tommy, $3,000, Patricia, $2,000, and Helen, $17,500. It was further indicated that all cases could be settled for $26,500 as a package. Mr. Baxter, upon being informed of the offer, wrote and said that his client was agreeable to paying the excess of $6,500 over the $20,000 limit of Nationwide. His letter was couched in terms indicating that a claim of bad faith would be made by Citizens Mutual Insurance Company unless Nationwide contributed its full $20,000 maximum policy limits toward settlement. Mr. Gruel recommended acceptance by Nationwide of the settlement offer.
Mr. Gruel was in contact with his client by telephone on December 14, 1964, and Mr. Gruel was requested to forward photographs so that the claims could be evaluated. These were forwarded and, in accord with the policy of Nationwide, it was required before maximum limits could be paid on a policy that a committee of three designated persons had to review the file and come to a decision. This meeting was held on the morning of December 18, 1964, and resulted in rejection of the offer and authorization for Mr. Gruel to pay a total of $15,000  $10,000 for Helen Nedeau and $5,000 for the other three claims. The individual evaluations by the committee of the Nedeaus' claims were $15,000, $16,750, and $18,205.
On December 18, 1964, with trial scheduled for December 21, 1964, a medical deposition was being *95 taken at Flint, Michigan. On the trip, Mr. Reamon and Mr. Gruel discussed settlement, and it was finally agreed that Tommy's and Patricia's claims would be settled for $1,000 each exclusive of medical, and Mr. Nedeau's claim would be settled for $5,000 including his own medical and the medicals for the children. Mr. Reamon said he would settle Mrs. Nedeau's claim for $17,000 but nothing less. It was also agreed that Mrs. Nedeau's case would be adjourned to a later time. Mr. Gruel called Mr. Baxter and they had words, Mr. Baxter saying his client wouldn't pay the $17,000 and Mr. Gruel asking what would he do if he (Mr. Gruel) consented to a judgment for Mrs. Nedeau for $25,000? Later Mr. Gruel admitted his error in saying what he did, but that Mr. Baxter knew he couldn't do it anyway. On Monday, December 21, 1964, the Honorable John H. Vander Wal approved the settlements for the two children and a consent judgment was entered for $5,000 for Mr. Nedeau. Mr. Baxter agreed to pay $7,000 for settlement of Mrs. Nedeau's claim but under protest stating:
"I would like to put on the record that we are making payments that is on behalf of Citizens Mutual Automobile Insurance Company in the amount of $7,000 in order to effectuate a settlement of the Helen Nedeau case. We are doing so under protest; under protest for this reason: it is our position that the Nationwide Insurance Company being the primary carrier should make its total policy limits available in these cases. They should make it available because it is our opinion that they as the primary carrier should be making a sum available equal to the $20,000 coverage. We have prior to today, do today stand ready to settle these cases, all of them for such an amount that it takes to settle these cases, and the amounts have been negotiated from time to time with plaintiffs' counsel *96 in order to avoid the law suit and the potential exposure involved in a law suit, but the figures, the breakdown of the settlement with respect to the individual cases have resulted by the negotiations with Mr. Gruel in a settlement of the $10,000 involving the father and the two children, below their coverage. We are going to settle these cases to protect our rights against the potential exposure, we deem it necessary and advisable to make this contribution of $7,000 to avoid a trial and needless exposure and dangerous exposure. We will look to Nationwide Insurance Company for recovery from them of an amount equal  well of the amount of $3,000 which we believe we are paying more than we should in view of our respective coverages."
It is plaintiff's claim herein that defendant did not settle the claims of the Nedeaus in good faith and that it should have made its entire $20,000 maximum coverage available before plaintiff was required to pay any settlement sum on its excess insurance policy.
Although the four cases were to be tried together, the verdicts of the jury would be separated, i.e., each plaintiff would be awarded the damages suffered by that plaintiff. It can be said that the settlements agreed upon by the parties took the place of the expected verdicts in favor of the 3 Nedeaus.
Of great importance is the lack of any evidence that Mr. Reamon, speaking for Mrs. Nedeau, would have accepted anything less than $17,000 for her claim. Mr. Reamon, Mrs. Nedeau, and Mr. Nedeau would have some knowledge of this, but none was questioned. It is true that Mr. Nedeau had out-of-pocket expense including loss of wages (not actual because his company paid him) of $4,900. His injuries were substantial; however, his attorney may have evaluated his claim differently than others because, at the time of the accident, Mr. Nedeau did *97 not have a license to drive. Mrs. Helen Nedeau's damages were extensive. Mr. Gruel, in reporting them to Nationwide, stated: "The case with the greatest exposure is Mrs. Nedeau's case. She has a permanently stiff left thumb as the result of a fracture and this makes her clumsy in using the left hand although it is not particularly disabling otherwise. Her right shoulder was broken and disabled her for approximately two months although she is now pain-free in this area except for an occasional catch and ache in the shoulder. Her left clavicle was broken and has left a noticeable bump on it but does not appear to give her any trouble at this time and she does have a full range of motion in the left arm and shoulder. The rib fractures healed in the normal course of events. The scars (on her face) are as reported to you in our letter of March 26, 1963, and at the time of the deposition they were still very noticeable. The disability in this area which is likely to arouse considerable jury sentiment is the difficulty that she has with drooling at the mouth because of numbness in the mouth area."
Mr. Baxter, Plaintiff's attorney, testified at the hearing in part as follows:
"Q. With respect to Mrs. Nedeau's claim, and in view of the statement by counsel of the insurance limits of 10 and 20, are you able to give us in your judgment the valuation of her injury with respect to the insurance coverage?
"A. Yes. I think everyone agreed at the time that her injuries well exceeded the $10,000 policy of Nationwide and I evaluated it as a dangerous case that could on trial use up our $10,000.[1] It could go *98 higher. So that there could still with the two coverages be an exposure to the insured. I haven't got a precise value on it but it was $17,000, $18,000, $20,000, perhaps, could have been higher."
Mrs. Nedeau's declaration sought damages in the amount of $50,000.
Plaintiff raises one issue on appeal: "In negotiating for settlement of four cases, by four members of one family, arising out of one accident, did the primary insurance carrier, defendant Nationwide, have the duty to pay its full limits on all cases according to the reasonable apportionment of damages before its insureds' excess carrier could be called on to contribute to settlement of any one case?"
There is not question as to the law applicable in this case. The defendant in deciding whether to settle the claims within the policy limits owed a duty to deal in good faith with respect to the insured's interest. City of Wakefield v. Globe Indemnity Co. (1929), 246 Mich 645; 40 ALR2d 168, Duty of Liability Insurer to Settle or Compromise; 7A Appleman, Insurance Law & Practice (1962), § 4711-4713, pp 551-587; Radcliffe v. Franklin National Insurance Company of New York (1956), 208 Or 1 (298 P2d 1002).
Plaintiff cites the case of Brown v. United States Fidelity and Guaranty Company (CA2, 1963), 31 F2d 675, as being similar to the facts in this case and in support of its position. It is somewhat analogous and we believe it is controlling. Therein the trial court dismissed the complaint but the Court of Appeals reversed and remanded stating that on these facts "bad faith" was a jury question. The trial court in the instant case after hearing all the evidence determined as a matter of fact that there *99 was not evidence of bad faith on defendant's part. We cannot say this finding of fact by the trial judge was erroneous.
Affirmed. Costs to defendants.
All concurred.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] "Q. Mr. Baxter, are you aware of what the Citizens' policy limits were in this case?

"A. I am.
"Q. What were they?
"A. Twenty-five per person; fifty per accident."