## WILLIAMS *v.* GRIFFIN

1. APPEAL AND ERROR—NONJURY TRIAL—FINDINGS OF FACT.
    Findings of fact by a trial court in a nonjury trial will not be reversed on appeal unless the findings are clearly erroneous (GCR 1963, 517.1).

2. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF FACT—CLEARLY ERRONEOUS—CREDIBILITY OF WITNESS.
    A reviewing court will not overturn the findings of the trier of facts unless they are clearly erroneous, because the trial court is in a better position to determine the credibility of witnesses by observing their conduct and demeanor in court.

3. VENDOR AND PURCHASER—LAND CONTRACT—PAYMENT—EVIDENCE—WITNESS'S CREDIBILITY.
    Refusing to allow a $5,000 credit allegedly paid on a land contract was proper where the $5,000 credit was supposedly based on a note given by the vendor's wife to the vendee, the defendant, the payment sheet and the note were both prepared by the defendant, the maker of the note was dead at the time of trial, the defendant testified that the debt represented notes and taxes paid up but did not show which notes and taxes, the payment sheet stated that the $5,000 was

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Appeal and Error § 839.
[3] 58 Am Jur, Witnesses § 862.
[4–6] 27 Am Jur 2d, Equity § 20.

for land contracts, without indicating which land contracts, the payment sheet recorded payments made on property unconnected with the land contract, defendant, although claiming full payment of the land contract, did not have a deed, the land contract price had been overpaid by $500 according to the payment sheet and that overpayment was inconsistent with defendant's weak financial position, and defendant's reputation for truth, as shown by both witnesses and defendant's criminal record, was not good, because the trier of fact is the sole judge of a witness's credibility.

4. EQUITY—FIDUCIARY—EXISTENCE OF RELATIONSHIP.
    A fiduciary relationship exists when there is a reposing of faith, confidence, and trust, and the placing of reliance by one upon the judgment and advice of another.

5. EQUITY—FIDUCIARY—EXISTENCE OF RELATIONSHIP.
    A fiduciary relationship existed where the deceased's advanced age and his physical infirmness had led to his complete reliance on the defendant, the fiduciary, who managed all of the deceased's business affairs including the payment of taxes, the collection of debts, and the sale of real estate and where the defendant admitted that he occupied a position of trust with the deceased and the deceased's wife and that the deceased often followed the defendant's advice concerning business matters.

6. EQUITY—FIDUCIARY—BENEFIT TO FIDUCIARY—PRESUMPTIONS—UNDUE INFLUENCE.
    Once a fiduciary relationship is established and the fiduciary benefits from it, the law recognizes a presumption that he in whom trust was reposed exercised his influence unduly.

Appeal from Wexford, Halford I. Streeter, J. Submitted Division 3 May 6, 1971, at Grand Rapids. (Docket Nos. 9426, 9427.) Decided July 26, 1971. Leave to appeal denied, 386 Mich 772.

Complaint by Carol Evelyn Williams, executrix of the estate of Leslie B. Donnelly, against John W. Griffin and Charlotte E. Griffin for reformation of a land contract and cancellation of deeds. Judgment for plaintiff. Defendants appeal. Affirmed.

*Donley & Walz* (by *Peter A. Jordan*), for plaintiff.

*Frank Landon Young,* for defendants.

Before: R. B. BURNS, P. J., and HOLBROOK and LEVIN, JJ.

R. B. BURNS, P. J. Defendant John Griffin and plaintiff's decedent, Leslie B. Donnelly, had been friends for a considerable number of years. Due to his deteriorating physical condition Donnelly was incapable of attending to his physical needs in his last few years of life. During Donnelly's physical infirmness Griffin became a frequent visitor and gradually assumed the role of bill collector, real estate salesman, and business advisor. Subsequent to the business transactions forming the basis of this lawsuit the Cadillac State Bank was appointed Donnelly's guardian.[1]

This appeal concerns three instruments executed by Mr. and Mrs. Donnelly; a land contract dated February 13, 1967, a warranty deed dated March 30, 1967, and a quitclaim deed also dated March 30, 1967. By the February land contract the Donnellys conveyed certain lots in the City of Cadillac to Griffin and his wife for a sum of $12,675. The contract provided for a down payment of $675 with the $12,000 balance being paid at a rate of 1% per month including interest at 6% per annum. According to the payment sheet of this land contract two credits were given on April 19, 1967; one for $7,500, the other for $5,000. The trial court permitted

---

[1] The petition for guardian appointment was made by Sergeant Sweigert of the Cadillac City Police Department. Sergeant Sweigert testified to the extremely depressed and unhealthy living environment of Mr. Donnelly. According to Sweigert the room in which Mr. Donnelly slept was a filthy mess; it contained human waste and fresh garbage which combined to emit a very strong odor.

credit for the $7,500, but refused to recognize the $5,000 entry. The $5,000 entry represented a 90-day note allegedly given by Mrs. Donnelly to Griffin which Griffin applied against his land contract debt. The $5,000 entry on the payment sheet stated that the $5,000 represented a note given by Mrs. Donnelly which was acknowledged by Mr. Donnelly.[2] The defendants argue that the trial judge abused his discretion in refusing to allow credit for the $5,000 entry; but we must uphold the trial court's finding unless we can conclude that it was "clearly erroneous". See GCR 1963, 517.1, and *McDaniels* v. *Schroeder* (1968), 9 Mich App 444. This reluctance to overturn the trier of facts is based on the well-recognized premise that the "trial court is in better position to determine the credibility of witnesses by observing their conduct and demeanor in court, an opportunity which the reviewing court on appeal obviously does not have". *Osius* v. *Dingell* (1965), 375 Mich 605, 611, 612. This premise takes on added significance in this case because the trial court simply decided not to believe the $5,000 entry. Since the payment sheet entry and the 90-day note it was based on were both prepared by Griffin, the court's decision in effect was that it did not believe Griffin's testimony. The trial court did not express its reasons for disbelieving Griffin's testimony but our review of the record convinces us that its decision was justified.[3] At least two witnesses[4] testified to Griffin's bad reputation for telling the truth and anyone observing Griffin's prior arrest and conviction rec-

---

[2] Mr. Donnelly initialed the entry; no question as to genuineness of the initials was presented at trial level.

[3] The clearly erroneous standard established by GCR 1963, 517.1 does not disturb long-established precedent that review of equity cases is *de novo*. *Papin* v. *Demski* (1970), 383 Mich 561.

[4] A probate judge and a police officer.

ord would hardly be instilled with confidence in his veracity.[5]

A number of questionable details also throw considerable doubt upon the validity of the $5,000 entry. To begin with the 90-day note purports to be a debt owed by Mrs. Donnelly to Griffin. Griffin testified that the debt represented "notes and taxes paid up". Since Mrs. Donnelly was deceased at the time of trial and because Griffin made no attempt to prove which notes and taxes he referred to, the court had only Griffin's word to rely on as to the validity of the note. In addition both the note and the payment sheet recited that the $5,000 was for land contracts, plural, without indicating which land contracts were involved. As previously mentioned Griffin prepared the payment sheet. The payment sheet somewhat mysteriously purports to record payments made on a piece of property unconnected with the land contract property. In addition, the defendants, although alleging full payment, did not have a deed for the property. According to the payment sheet the land contract price had been overpaid by $500. This overpayment was inconsistent with Griffin's weak financial position at the date of the entry.[6]

The trial court as trier of the fact was the sole judge of the credibility of Griffin.

The trial court held, and we agree, that Griffin stood in a fiduciary relationship to Donnelly. Such a relationship exists when there is a reposing of faith, confidence, and trust, and the placing of reliance by one upon the judgment and advice of another. *In re Jennings' Estate* (1952), 335 Mich 241; *In re Wood Estate* (1965), 374 Mich 278. Testimony in this case clearly established that Mr.

---

[5] They range from fraud to false pretenses.

[6] When Mr. Griffin was accused of a crime about this time he could not afford counsel to represent him. Testimony indicated that one of Griffin's debts amounted to $14,000.

Donnelly, because of his feeble physical condition, was incapable of looking after himself. It is inconceivable to us that Donnelly was capable of attending to his business and financial matters. Griffin readily admitted that he had occupied a position of trust with both Mr. and Mrs. Donnelly and testified that Donnelly often heeded his advice concerning business matters. Griffin managed all of Donnelly's business affairs including the payment of taxes, the collection of debts, and the sale of real estate. Donnelly's advanced age and his physical infirmness led to his complete reliance on Griffin.[7] This substantial reliance justified the trial court's decision to impose upon Griffin, as Donnelly's fiduciary, the burden[8] of presenting credible evidence as to the fairness[9] of his business dealings with Donnelly. *Walters* v. *Pierson* (1960), 359 Mich 161. It was stated in *In re Wood Estate* (1965), 374 Mich 278, 285:

"Once such a relationship [fiduciary] is established and the fiduciary * * * benefits therefrom, the law recognizes a presumption that he in whom trust was reposed exercised his influence unduly."

The trial court was correct in imposing this evidentiary burden upon the defendant.

As was the situation with the land contract, many questionable details surround the February quitclaim and warranty deeds. The trial judge's conclusion that both deeds were not intended as out-

---

[7] Griffin also drove Donnelly to restaurants for meals. Donnelly lived apart from his wife and saw very little of his family and relatives.

[8] The ultimate burden of proof rests with the plaintiff; but the burden of erasing the presumption of undue influence, *i.e.*, the burden of going forward, shifts to the defendant. *In re Wood Estate* (1965), 374 Mich 278.

[9] A fiduciary is held to the utmost fairness and honesty in dealing with the party to whom he stands in that relation. *Horvath* v. *Langel* (1936), 276 Mich 381.

right conveyances but were rather products of infidelity is supported by the record. Defendants failed to introduce sufficient credible evidence tending to prove the legitimacy of these two business transactions.

Affirmed. Costs to plaintiff.

All concurred.