NAPOLEON LUMBER COMPANY v RATHBUN

APPEAL AND ERROR—NONJURY TRIAL—CLEARLY ERRONEOUS STAN-
DARD.

   The findings of a trial court sitting without a jury will not be
   overturned unless they are clearly erroneous where the trial
   court considered the averments raised by the pleadings and
   resolved the case on the basis of the proofs (GCR 1963, 517.1).

Appeal from Lenawee, Robert W. McIntyre, J.
Submitted Division 2 May 3, 1972, at Lansing.
(Docket No. 11559.) Decided May 30, 1972.

Complaint by Napoleon Lumber Company
against C. Harold Rathbun and Madeline Rathbun
for payment of a negotiable note; counterclaim for
damages for breach of contract. Judgment for
plaintiff. Defendant appeals. Affirmed.

*Walker, Watts, Timms & Sheridan,* for plaintiff.

*Moran & Mack,* for defendants.

Before: QUINN, P. J., and FITZGERALD and VAN
VALKENBURG,* JJ.

FITZGERALD, J. This case involves an action on a
negotiable promissory note and a countercomp-
laint for damages for alleged breach of contract.
Plaintiff Napoleon Lumber Company, having sold

REFERENCE FOR POINTS IN HEADNOTE
5 Am Jur 2d, Appeal and Error § 839.

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to defendants a grain-handling system for use with their grain storage facilities, brought an action in the Lenawee County Circuit Court to recover from defendants the balance owing on a promissory note. Said note had been executed by defendants to The Community Bank of Napoleon, Ohio, and later assigned by that bank to plaintiff company. Plaintiff, in its complaint, alleged that defendants owed a balance of $5,115 on the principal. Defendants, by answer, admitted having failed to pay the note but averred that they were not liable to plaintiff for any sums whatsoever on account of the allegations of their cross-complaint.

In their cross-complaint, the defendants alleged: (1) that "on or about March 8, 1966, defendant, C. Harold Rathbun, entered into an agreement with Napoleon Lumber Company of Napoleon, Ohio to purchase a grain handling system"; (2) that "Napoleon Lumber Company warranted unto cross-plaintiff that said grain handling system would be installed in plenty of time to handle the harvest in the fall of 1966", and that "The merchandise purchased by cross-plaintiffs would operate satisfactorily and that such machinery was fit to handle all of the cross-plaintiffs' grain when harvested"; (3) that "cross-defendant was to erect the grain handling system and that cross-plaintiffs were to pay the first $450.00 cost for such erection with the cross-defendant to assume the remaining expense for said erection"; (4) that "cross-defendant has breached its agreement unto these cross-plaintiffs in that the grain handling system is still not completely installed and that said system was not installed in time to handle the harvest in the year 1966 as agreed between the parties"; and (5) that "there has been a breach in the implied warranty of fitness on the product sold by cross-

defendant to cross-plaintiffs in that it did not and has not worked satisfactorily since its purchase".

Defendants set forth the damages which they allegedly incurred because "of the delay in installing the grain handling system and the improper installation of the same". These damages amounted to a total of $6,120.18.

On May 26, 1970, the plaintiff filed an answer to cross-complaint in which it: (1) admitted that an agreement, as described by cross-defendants, had been entered into; (2) denied "that a grain handling system would be installed at any time", and denied "that it warranted that such machinery was fit to handle all of cross-plaintiffs' grain"; (3) alleged "that cross-plaintiffs were to erect the grain handling system and that cross-defendant would reduce the total cost of said system by the sum of $450.00 which was in the nature of an allowance to cross-plaintiffs for the purpose of erecting said system"; (4) denied "that it has breached its contract" while admitting "that the grain handling system may not be completely installed; but it alleges that the work to be completed is minor in nature and the complete installation would be the burden of the cross-plaintiffs"; and (5) denied "that there has been any breach of the implied warranty of fitness".

On December 30 and 31, 1970, the matter was heard before the court sitting without a jury. On February 16, 1971, the findings and opinion of the court were filed and, on March 26, 1971, a judgment was entered in the circuit court. That judgment provided, in part, as follows:

"It is the order of the court that pursuant to a written opinion dictated by said court on February 11, 1971, and the court having found that the plaintiff was entitled to a judgment for the balance due on its note,

but with interest computed at the rate of six and one-half (6-1/2%) per cent per annum but not computed upon the judgment rendered on the defendant's counter-claim in the amount of one thousand one hundred thirty eight and 34/100 ($1,138.34) dollars; * * *

* * *

"It is hereby ordered and adjudged that the plaintiff have judgment against the defendant in the net amount of four thousand two hundred ninety seven and 78/100 ($4,297.78) dollars * * * ."

This appeal by defendants followed.

Defendants claim that the trial court did not consider their theory of damages; that no findings were made as to defendants' claim of damages because of the alleged breach of warranty of fitness of the entire system sold to defendants; and that all of the damages to defendants' crops after harvest in 1966 were caused because a part of the system, as installed, did not function properly. They contend that the court simply found that defendants were not entitled to damages because "time was not of the essence of the contract between the parties"; and they concede that they did not prove, and assert that they did not intend to prove, that their damages were caused by delay in the completion of the system.

Plaintiff company maintains that the defendants, in their pleadings, alleged three distinct theories of breach of contract as follows: (1) that the grain handling system was supposed to be, and was not, completely installed by plaintiff, so that defendants are entitled to be reimbursed for the cost of completing the work (i.e., failure to perform the contract); (2) that during the course of the transaction plaintiff made certain representations and failed to take certain actions, with the result that certain equipment broke down, thereby caus-

ing defendants' loss (i.e., breach of warranty of fitness); and (3) that plaintiff was to have the work completed in time for the fall harvest of 1966 and that it failed to do so, thereby contributing to defendants' loss (i.e., breach of provision of time being of the essence). Plaintiff asserts that the trial court, in resolving the questions raised by the pleadings, determined that plaintiff company was supposed to complete the job and awarded to defendants $1,138.34 so that the job could be completed; and that, as to defendants' other contentions, the trial court simply did not accept their version of the facts. We quote a portion of the trial court's opinion, which supports the arguments set forth by plaintiff:

"Plaintiff denies any agreement that the grain handling system was to have been completed at any given time, that they promptly obtained and installed new augers after the first set proved faulty and they deny that any of the claimed crop damage was due to any action or inaction on their part.

"This court finds as a matter of fact that the letter-contract received into evidence as plaintiff's exhibit 4 is a good and valid contract between the parties hereto. * * * The court concludes from the action of the parties following the execution of this instrument that the Napoleon Lumber Company, eager to entertain future business with the defendants, and eager also to enlarge their sale of grain handling systems, did assume responsibility of the final erection of this system except for those matters specifically set forth within the instrument which the defendant undertook to do. * * * [Plaintiff was and is] responsible for erection of the equipment after work which defendants provided in assembling the equipment on the ground.

"The court cannot find however that the defendants have prevailed in their contention that the plaintiff promised to do the work necessary and to have the entire assembly ready for operation in time for the fall harvest. The only evidence of this allegation is the bald

statement of Mr. Harold Rathbun, which is denied by all of the witnesses of the Napoleon Lumber Company. The court cannot find that Mr. Harold Rathbun, prevailed by establishing with a preponderance of the evidence that time was of the essence of this contract. * * * No liability is therefore to attach to the Napoleon Lumber Company by virtue of the fact that the grain handling system was not completed in time to handle the fall harvest.

" * * * There is no allegation that any fraud was used to obtain this execution and the court finds that judgment is due the plaintiff to the extent of the full value of the balance of the note in question for the purchase of the equipment. * * *

"Interest under said note, however, will not be charged upon sums which the court will hereinafter set forth as established by the counter-claim of the defendants.

"By virtue of the fact that the court has determined that time was not the essence of this contract, the defendants will not be allowed any damages with respect to loss of crops. The court does find, however, that it was the obligation of the plaintiff to perfect the grain handling equipment properly since the blueprints were in their possession and it was in their best interest to do so. The testimony of Laser's Millwright Service indicates that it would require $1,089 to complete the installation and to cause it to work properly.

" * * * On the counter-claim the defendants will be allowed the sum of $1,089 for completion of the work upon the grain handling system. In addition, they shall be allowed the sum of $49.34, being the amount advanced by the defendants on the erection costs provided in the contract not to exceed $450, since the defendants paid a total of $499.34. Defendants are therefore allowed a judgment on their counter-complaint in the sum of $1,138.34. Interest on the original note will not be allowed to the extent of this sum of money."

The trial court considered the averments raised by the parties in their pleadings and resolved the case on the basis of the proofs. A review of the

record convinces us that the findings were not clearly erroneous. *Williams v Griffin,* 35 Mich App 179 (1971); GCR 1963, 517.1.

Affirmed. Costs to plaintiff.

All concurred.