MAXMAN v FARMERS INSURANCE EXCHANGE

Docket No. 77-2794. Submitted April 12, 1978, at Detroit.—Decided August 8, 1978. Leave to appeal applied for.

Ida Maxman was injured in an automobile accident when the car she was driving was struck in the rear by a car driven by James Lihov, an insured of defendant Farmers Insurance Exchange. Lihov died six days after the accident from unrelated causes. Neither plaintiffs Ida Maxman and her husband Sidney Maxman nor defendant Farmers Insurance Exchange knew of Lihov's death. Unsuccessful settlement negotiations were continued until Lihov's estate had been closed and presentation of claims barred by the Probate Code. Suit was commenced against Lihov after notification of his death and within the statute of limitations for auto-negligence actions. An order was entered in Wayne Circuit Court, Thomas J. Brennan, J., quashing service and striking the complaint on the ground that the claims were barred by the Probate Code. ·Order affirmed on appeal, *Maxman v Goldsmith,* 55 Mich App 656; 223 NW2d 113 (1974). A complaint was then filed naming Farmers as defendant. Plaintiffs alleged that Farmers misrepresented its authority to settle plaintiff's original claim against Lihov after Lihov's death and after his estate had been closed and the time for reopening it had passed. The suit was based solely on a misrepresentation of Farmers authority to settle a claim where no authority existed. Summary judgment for defendant in Oakland Circuit Court, Steven N. Andrews, J. Plaintiffs appeal. *Held:*

An insurer acts as an insured's agent in negotiating possible

REFERENCES FOR POINTS IN HEADNOTES
[1, 7] 73 Am Jur 2d, Summary Judgment §§ 26, 27.
[2, 8] 3 Am Jur 2d, Agency § 1.
[3, 9] 44 Am Jur 2d, Insurance § 1523 *et seq.*
Duty of liability insurer to settle or compromise. 40 ALR2d 168.
[4, 6] 3 Am Jur 2d, Agency §§ 300, 340.
[5] 37 Am Jur 2d, Fraud and Deceit §§ 17, 18, 228.
[6] 37 Am Jur 2d, Fraud and Deceit §§ 20, 144–146, 149.
[7] 73 Am Jur 2d Summary Judgment §§ 15, 16, 18, 32, 35.
[10] 43 Am Jur 2d, Insurance §§ 194, 195.
[11] 44 Am Jur 2d, Insurance §§ 1530, 1531, 1533.

settlements where third parties are injured by the insured, and as an agent, is liable to third parties for misrepresenting its authority to act on behalf of the insured where no such authority exists in fact. A representation which is false in fact and actually deceives another and is relied on by him to his damage is actionable, regardless of whether the person making the representations acted in good faith in making them, where the loss of the party deceived inures to the benefit of the other.

Reversed and remanded.

BASHARA, J., dissented. He would hold that the relationship between an insured and insurer is one of contract, not agency. The authority conferred upon an insurer under a contract to settle claims against its insured is for the benefit of the insurer as an element of the consideration given for its indemnification of the insured. Farmers would not be liable under contract principles and any remedy plaintiffs were entitled to was readily available by the exercise of reasonable diligence in prosecuting their claim against defendant's insured or his estate.

### Opinion of the Court

1. Judgment—Summary Judgment—Issue of Fact.

Summary judgment grounded on no genuine issue of fact is improper, whether or not evidentiary facts are disputed, if the factfinder can go either way on a material fact.

2. Principal and Agent—Definition of Agency.

Agency in its broadest sense includes every relation in which one person acts for or represents another by his authority.

3. Insurance—Principal and Agent—Third Parties—Settlements.

An insurer acts as an insured's agent in negotiating possible settlements with third parties injured by the insured.

4. Principal and Agent—Misrepresentation of Authority.

An agent is liable to third parties for misrepresenting his authority to act on behalf of a principal where no such authority exists in fact.

5. Principal and Agent—False Representations—Deceit—Damages—Unjust Enrichment.

A representation which is false in fact and actually deceives another and is relied on by him to his damage is actionable, regardless of whether the person making the representations

acted in good faith in making them, where the loss of the party deceived inures to the benefit of the other.

6. Principal and Agent—Misrepresentation of Authority—Mere Silence.

Mere silence may constitute misrepresentation of an agent's authority to act on behalf of his principal.

### Dissent by Bashara, J.

7. Judgment—Summary Judgment—Issue of Fact—Evidence—Court Rules.

*A motion for summary judgment based on allegations that except as to the amount of damages there is no genuine issue as to any material fact extends the scope of the trial court's review beyond that of the pleadings to discern whether evidence has been, or will be, presented raising a genuine issue of material fact; the parties must present affidavits, depositions, or documentary evidence from which the court will make its determination, resolving all doubts to the benefit of the nonmoving party (GCR 1963, 117.2[3]).*

8. Principal and Agent—Relationship—Scope of Authority—Duties of Agent—Fidelity to Principal.

*Agency is an expansive legal concept, including within its general scope all those relationships in which one party by the authority of another acts for or represents the latter; there are duties imposed upon the agent in his conduct of the principal's affairs and fidelity to his principal is the essential basis of an agency.*

9. Insurance—Settlement of Claims—Authority to Settle—Contracts—Consideration—Indemnification.

*The authority conferred upon an insurer under a contract to settle claims against its insured is for the benefit of the insurer as an element of the consideration given for its indemnification of the insured.*

10. Insurance—Insurer—Insured Relationship—Contract—Agency.

*The relationship between an insured and insurer is one of contract, not agency; to hold otherwise would impose rights and obligations upon the contracting parties in derogation of the provisions of their voluntary contract*

11. Insurance—Legal Relationship—Fraud and Bad Faith—Protection of Insured.

*It is unnecessary to facilitate adequate protection for an insured*

*and others dealing with an insurer from the insurer's wrongful deeds because prohibition against fraud or bad faith is imposed by law upon every legal relationship and is a part of every lawful grant of power and it is not necessary to contract for it; the power to control settlements having been granted to an insurer for the purpose of its own protection under an insurance policy, the insurer is bound to use the power in good faith for that purpose.*

*Hopping & Boyer* (by *Donald M. Churilla*), for plaintiffs.

*Harvey, Kruse & Westen, P. C.* (by *James N. Martin* and *George W. Steel*), for defendant.

Before: T. M. BURNS, P. J., and N. J. KAUFMAN and BASHARA, JJ.

T. M. BURNS, P. J. The question in this case is whether plaintiff, Ida Maxman,[1] injured when the car she was driving was struck in the rear, may maintain an action against the insurer of the other driver based on misrepresentation of authority. To see how this question arises, it is necessary to set out a detailed statement of facts.

James Lihov, Farmers Insurance Exchange's insured, and plaintiff were involved in an automobile accident on February 10, 1969. The Lihov car struck plaintiff's vehicle from the rear. There has never been any question of Lihov's responsibility for the accident, the only question was the amount of plaintiff's loss.

Plaintiff retained counsel the day after the accident and the attorneys immediately notified Mr. Lihov and the present defendant. From that point on, plaintiff's attorney dealt only with representatives of Farmers. Settlement negotiations were

---

[1] There are actually two plaintiffs in this case, Mr. and Mrs. Maxman. Mrs. Maxman was injured in the automobile accident. Her husband has presented a derivative claim.

begun immediately and continued until shortly before suit was filed against Mr. Lihov.

Mr. Lihov died six days after the accident from causes unrelated to the accident. Neither plaintiff nor defendant knew of this fact until after Lihov's estate had been closed and the period for reopening it for presentation of a claim under the Probate Code had passed. Although the suit against Mr. Lihov was begun within the three-year statute of limitations, it was found to be time barred by the trial court under the Probate Code. This Court affirmed, *Maxman v Goldsmith,* 55 Mich App 656; 223 NW2d 113 (1974), and plaintiff abandoned the Supreme Court appeal to start this suit, 394 Mich 758 (1975).

In the present case, plaintiff filed a two-count complaint naming Farmers as the defendant. The trial court again granted summary judgment, although the basis of the motion is not readily apparent, counsel and court both having failed to specify the subrule which was being relied upon, GCR 1963, 117.2(1) or (3).

Only the first count is being pursued in this appeal. Plaintiff has alleged that Farmers misrepresented its authority to settle plaintiff's original claim against Lihov, after Lihov's death and after his estate had been closed and the time for reopening it had passed. It is this representation of authority, where none existed, which plaintiff claims has caused her injury. She is not alleging that defendant is directly liable for the automobile accident, although this will be the measure of damages in the misrepresentation action, nor is she claiming, at this point, that the defendant concealed Lihov's death. The suit is based solely on a misrepresentation of Farmers authority to settle a claim where no authority existed.

The trial court granted summary judgment to Farmers after receiving briefs and hearing arguments. The basis of the motion is not readily apparent.[2] Judge BASHARA has written to affirm the summary judgment on the basis of GCR 1963, 117.2(3), no issue of material fact. We cannot agree.

Certain evidentiary facts are not disputed. Farmers acted for Lihov only under his policy of insurance, not as a volunteer. Neither Farmers nor plaintiff knew of Lihov's death until no suit against him or his estate could be maintained. No representative of Farmers ever expressly stated that Lihov was still alive after his death. However, it also appears to be undisputed that the settlement negotiations continued past the point that the company could be held liable on its contract of insurance with Lihov or his estate.

But these evidentiary facts are not the material facts spoken of in the court rule. See, *Simerka v Pridemore*, 380 Mich 250, 275; 156 NW2d 509 (1968) (opinion of SOURIS, J.). One authority has stated the proposition thus:

"Whether or not the evidentiary facts are disputed, if the factfinder can go either way on a material fact, summary judgment grounded on no genuine issue of fact is improper."

Bashara, *The Elusive Summary Judgment Rule:*

[2] In arguing the motion before the trial court defense counsel stated that "under either theory plaintiffs have simply failed to state a cause of action". Later when questioned by the trial court defense counsel stated, "There is no statement of law which would support plaintiff's position of false representations".

In granting defendant's motion, the court stated it was relying on the arguments made by defense counsel. The only conclusion that we can draw after examining the record is that the court was granting summary judgment under GCR 1963, 117.2(1), failure to state a cause of action.

*Sifting Through the Maze,* 1976 Det Col of Law Rev 397, 419.

Even given the undisputed evidentiary facts, if plaintiff has stated a cause of action there are material issues of fact in dispute: Was there a representation of authority? Did this deceive plaintiffs? Was the misrepresentation the proximate cause of plaintiff's loss? These questions are not answered by merely concluding that Farmers' adjuster never expressly stated that Mr. Lihov was still alive.

The crux of this case is whether plaintiff has pled facts upon which the court will recognize a right to recover. In other words, by pleading that Farmers represented it had authority to settle plaintiff's claim against Mr. Lihov or his estate, where in fact no such authority existed, has plaintiff stated a cause of action for misrepresentation? The answer lies in an examination of the relationship between Lihov, Farmers and plaintiff and the substantive law of the tort of misrepresentation.

Agency in its broadest sense includes every relation in which one person acts for or represents another by his authority. *Saums v Parfet,* 270 Mich 165, 171; 258 NW 235 (1935), *Stephenson v Golden,* 279 Mich 710, 734–735; 276 NW 849 (1937). In dealing with plaintiffs, Farmers was acting on behalf of Mr. Lihov, not as a volunteer but because of a contract of insurance. Farmers was contractually given power, but not the duty, to make any compromise within the policy limits and authority to conduct negotiations toward that end.

The relationship admittedly does not fit neatly into the definition[3] of agency with all its ramifica-

---

[3] We have examined the cases plaintiff cites for the proposition that the relationship was one of agency and also examined the authority

tions. The insurance company also furthers its own interest by settling claims as quickly and inexpensively as possible. But, the overriding concern in the relationship is for the insured—not the company—as witnessed by those cases imposing liability on the insurer for failing to make a good faith effort to settle the claim within the policy limits. *City of Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929), *Citizens Mutual Ins v Nationwide Ins,* 29 Mich App 91; 185 NW2d 99 (1970). See also, 40 ALR2d 168. We conclude, therefore, that as to third parties injured by the insured, the insurer acts as the insured's agent in negotiating possible settlements.

An agent is liable to third parties for misrepresenting his authority to act on behalf of a principal where no such authority exists in fact. 2 Restatement Agency 2d, § 330, pp 86–87.

There is no requirement that misrepresentation of authority be treated any differently than any other tortious misrepresentation. In Michigan, any representation which is false in fact and actually deceives the other and is relied on by him to his damage is actionable, regardless of whether the person making the representations acted in good faith in making them, where the loss of the party deceived inures to the benefit of the other. *Phillips v General Adjustment Bureau,* 12 Mich App 16; 162 NW2d 301 (1968). The misrepresentation may consist of mere silence. *Michigan National Bank v Marston,* 29 Mich App 99; 185 NW2d 47 (1970). The rules stated in these two cases apply to the situation raised in plaintiff's complaint.

cited by defendant criticizing that conclusion. On balance, we believe that the courts have resorted to calling this relationship agency almost by default. There is no other term in the law which can accurately describe the relationship. Because there is a void in this area, courts have resorted to calling the relationship agency and have applied agency rules.

Under the rules stated in *Phillips,* plaintiff has stated a cause of action sufficient to avoid summary judgment. The loss that plaintiff did not recover against Lihov inured to the benefit of Farmers. Plaintiff has pled facts to fulfill the other requirements. Whether a jury will conclude that the misrepresentations alleged were the cause of plaintiff's failure to recover in the first suit is not a question we should be called upon to answer at the present time.

The trial court erred in granting summary judgment.

Reversed and remanded for further proceedings not inconsistent with this opinion. Costs to appellant.

N. J. KAUFMAN, J., concurred.

BASHARA, J. *(dissenting).* I must respectfully dissent. In so doing, an exposition of the facts as they are revealed to me becomes necessary.

More than nine years ago plaintiffs allegedly sustained personal injuries from an automobile accident involving defendant's insured. After receiving notice of the accident from plaintiffs' counsel, defendant retained an independent claims adjuster to handle the claim. During the next year-and-a-half, in developing the information pertinent to the accident, he made numerous contacts with plaintiffs' counsel.

When the adjuster attempted to contact the insured, he discovered that the insured had died six days after the accident from unrelated causes. Further investigation disclosed that the insured's estate had been closed approximately six months prior to the adjuster's discovery of his death.

This information was communicated by the ad-

juster to defendant and plaintiffs' counsel. Settlement negotiations were then terminated, defendant maintaining that plaintiffs' cause of action against the insured was barred by the Probate Code.[1] Approximately a year later plaintiffs initiated suit against the insured. Defendant entered an appearance on behalf of the insured through its attorneys and moved to quash service of process and strike plaintiffs' complaints against the insured and his special administrator. The motions were granted and affirmed on appeal to this Court.[2]

An independent action was instituted by plaintiffs against defendant, and it is that litigation that we are called upon to review. Essentially, plaintiffs' theory contends that by continuing the investigation and settlement negotiation after the insured's death, defendant breached its implied warranty of authority, resulting in damage to plaintiffs. As a foundation for that theory, plaintiffs maintain that the defendant was the insured's agent, that the agency terminated upon the death of the insured, and that the defendant was thereafter without authority to settle the claim against its insured.

Upon defendant's motion for summary judgment, the trial court held that the relationship between defendant and its insured was not that of agency, and found that no misrepresentations were made by defendant concerning the insured's death. Plaintiffs contend that these findings were erroneous. They claim that a genuine issue of

[1] See MCL 701.19, 708.18; MSA 27.3178(19), 27.3178(428) and *Maxman v Goldsmith*, 55 Mich App 656; 223 NW2d 113 (1974), *appeal dismissed*, 394 Mich 758 (1975).

[2] *Maxman v Goldsmith*, 55 Mich App 656; 223 NW2d 113 (1974), *appeal dismissed*, 394 Mich 758 (1975). Appeal was dismissed on plaintiffs' motion. *Id.* The factual scenario to this point in the controversy is delineated in greater detail in this Court's previous opinion.

material fact was presented as to defendant's mis-representation. Plaintiffs also urge this Court to declare the relationship between defendant and its insured to be that of agent and principal, respectively.

A motion for summary judgment pursuant to GCR 1963, 117.2(3) extends the scope of the trial court's review beyond that of the pleadings to discern whether evidence has been, or will be, presented raising a genuine issue of material fact. The parties must also present affidavits, depositions, or documentary evidence from which the trial court will make its determination, resolving all doubts to the benefit of the non-moving party. *Rizzo v Kretschmer,* 389 Mich 363, 370–371; 207 NW2d 316 (1973). See also *Durant v Stahlin,* 375 Mich 628; 135 NW2d 392 (1965).

Depositions from defendant's claims adjuster and plaintiffs' former counsel were filed with the trial court. Both deponents affirmatively stated that no representations were expressed that the insured was alive during the time the adjuster was communicating with plaintiffs' counsel. Further, the adjuster stated that he did not learn of the insured's death until approximately six months after the estate of the insured was closed, by which time plaintiffs' claim was barred by the Probate Code.[3]

Nothing was offered by plaintiffs to show that evidence contrary to the foregoing assertions would be presented. Consequently, I conclude that the trial court properly determined that no genuine issue of material fact existed as to the defend-

---

[3] Although not expressed by plaintiffs with any degree of specificity, presumably they contend that reliance upon the defendant's alleged misrepresentations caused them to refrain from initiating a suit against the insured until after the action was barred by the Probate Code.

ant's alleged misrepresentations. *Durant v Stahlin,* 375 Mich 628, 638; 135 NW2d 392 (1965).

The contract of insurance between defendant and its insured required the defendant to assume the defense of any claims against the insured arising from occurrences covered by the policy. Additionally, defendant was empowered under the contract to compromise and settle those claims as it deemed advisable. The viability of plaintiffs' warranty action depends upon whether these contractual obligations establish defendant as the agent of its insured.

Agency is an expansive legal concept, including within its general scope all those relationships in which one party by the authority of another acts for or represents the latter. *Saums v Parfet,* 270 Mich 165, 171; 258 NW 235 (1935). However, further identifying characteristics of agency stem from the duties imposed upon the agent in his conduct of the principal's affairs. Fidelity to his principal is the essential basis of an agency. *Horvath v Langel,* 276 Mich 381, 385; 267 NW 865 (1936). Our Supreme Court has stated the obligations of an agent in the following terms:

" 'The agent is a fiduciary and owes to his principal the duty of good faith and loyalty. The agent is under the duty to use care, skill, and diligence, and *to obey the instructions of his principal.'*

" 'It is a settled principle of equity that where a person undertakes to act as an agent for another, he cannot be permitted to deal in the subject matter of that agency upon his own account and for his own benefit.' " *Burton v Burton,* 332 Mich 326, 337; 51 NW2d 297 (1952) (emphasis added, citation omitted).

In contrast to the foregoing principles forming the foundation of an agency relationship, the indi-

cia of the insured-insurer relation was comprehensively analyzed by our Supreme Court as follows:

> "The policy amount constitutes a dead line of contractual power, obligation, and duty. The insured pays for protection to that amount only, and the insurer has no obligation to indemnify him in a greater sum. *The insurer has no authority to bind insured by compromise in any amount above such limit, nor to prevent his settling his own possible excess liability as he chooses.* Within the policy limit, the insurer has no contract obligation to effect settlement, as the policy contains no promise that it will do so under any conditions or circumstances. Nor within such limit can the insured be injured by any compromise or failure to compromise, as liability to that amount must be paid by the insurer. It seems very plain that the *exclusive power to control settlements within the amount of the policy is ceded to the insurer for its sole benefit,* to save itself, as far as may be, on account of its engagement to insured. Because of its purpose, the power is to be used according to the judgment and discretion of the insurer, and, therefore, in *attempting exercise of the power, it is not performing, or assuming to perform, a legal duty to insured,* either express or implied. Without such legal duty, the obligation to use due care in the exercise of the power cannot be imposed by law." *City of Wakefield v Globe Indemnity Co,* 246 Mich 645, 649–650; 225 NW 643 (1929) (emphasis added).

This description of an insurer's function under its contractual obligations is in nowise characteristic of an agent. The contractual power of the insurer to settle claims is utilized for its own benefit. Moreover, the insurer is precluded from binding the insured to a settlement in excess of the policy limits. Consequently, whatever authority is conferred upon the insurer under the contract to settle claims against the insured is for the benefit of the insurer as an element of the consideration given for its indemnification of the insured.

Plaintiffs cite a number of cases from other jurisdictions and insurance law treatises in support of their position. My review of those authorities, however, discloses that the courts were either seeking a standard by which to measure the insurer's discharge of its contractual obligations[4] to the

---

[4] Representative of such cases referring to agency in analyzing the insured-insurer relationship is *Georgia Casualty Co v Mann*, 242 Ky 447; 46 SW2d 777 (1932). That case involved an action by the insured to recover the amount by which an injured party's judgment exceeded the insurance limits. In determining whether the insurer acted unreasonably in refusing to settle the claim, the court selected a negligence standard analogous to that inhering in principal-agent relations. *Id.* at 451; 46 SW2d at 779. There was no apparent intent by the court to denominate the insured-insurer relationship as an agency for all purposes.

In *Hayes v Gessner*, 315 Mass 366; 52 NE2d 968 (1944), an insurer by making promises of settlement induced an injured party to forestall instituting an action against the insured until it was barred by the statute of limitations. The court concluded that the insured was estopped from raising the statute of limitations defense, since to do otherwise would enable the insurer to exculpate itself by its own wrongdoing. However, agency principles were unnecessary to attaining the result, because the insurer was responsible for defending the action and would be directly estopped from establishing the consequences of its active fraud as a defense. The import of the decision is evaluated in a treatise cited by plaintiffs, as follows:

"This result is obviously proper where the insurer is liable for the total amount recovered as it should not be able to avoid being estopped by its own adjuster's actions by hiding behind the person of its insured. Except where liability insurance is involved, the insurer is sued directly and may be estopped by the actions of its agents.

"The 'no action' clause is not meant to change the insurer's responsibility for its agents. However, the court should not reach this result unless it is willing to place the ultimate liability upon the insurer. *The insured has no control over the insurer and its agents—in fact, he specifically surrenders this control by the terms of the contract.* To use the analogy referred to in the *Hayes* case, it is true that the insured is 'liable' for a settlement within the policy limits since, of course, the insurer makes the settlement and the insurer pays it; but *the insurer would not have the authority generally to make a settlement over the policy limits unless participated in by the insured.* Accordingly, where the third party has been injured by the adjuster's representations, so as to create an estoppel, the insurer should be liable for its negligence even though the recovery be over the policy limits." 16 Appleman, Insurance Law and Practice, § 8646, fn 89.35 (1968) (emphasis added).

*See also Traders & General Insurance Co v Rudco Oil & Gas Co*, 129 F2d 621 (CA 10, 1942), *Kirchen v Orth*, 390 F Supp 313 (ED Wis, 1975), 3 Couch on Insurance 2d, § 25:99 (1960).

insured or declared an agency relationship on a basis more akin to *ipse dixit* than sound legal reasoning.[5]

Accordingly, I would decline to hold that the relationship between an insured and insurer is one of agency. To do otherwise would impose rights and obligations upon the contracting parties in derogation of the provisions of their voluntary contract. Further, it is unnecessary to facilitate adequate protection for the insured and others dealing with the insurer from its wrongful deeds.[6] For, as our Supreme Court has observed:

"Prohibition against fraud or bad faith is imposed by law upon every legal relationship, is a part of every lawful grant of power, and it is not necessary to contract for it. The power to control settlements having been granted to insurer for the purpose of its own protection under the policy, it is bound to use the power in good faith for that purpose." *Globe Indemnity Co, supra,* at 650.

The contract of insurance, in express terms, defined the relationship between defendant and its insured. It was, therefore, within the province of the trial court to conclude, as a matter of law, that

[5] *See Stevens v Gulf Oil Corp,* 108 RI 209; 274 A2d 163 (1971). The court's perception of the existence of an agency was limited to the facts of the case, did not follow from any extended reasoning, and was entirely unnecessary to the result reached.

[6] Where the insurer has the right to control the defense of claims and represents antagonistic interests, the following observation was made concerning the availability of remedies for breach of its contractual duties:

"In an ordinary case in which the same insurer covers codefendants whose interests are antagonistic, the retention of separate and independent counsel for each will generally suffice to fulfill the insurer's duty with regard to the matter of representation, and any breach of duty thereafter will be remediable by an action against the insurer for negligence or bad faith or by a professional liability action against the attorney." 7A, Appleman, Insurance Law and Practice, § 4681 (Supp 1978) (footnote omitted).

plaintiffs' theory of agency was unavailing. On the basis of the foregoing principles, I would sustain that conclusion.

Any remedy to which plaintiffs were entitled was readily available by the exercise of reasonable diligence in prosecuting their claim against the defendant's insured or his estate. I do not believe that we should countenance utilization of a theory that comports with neither reason nor principle to relieve plaintiffs from their own negligence in asserting their legal rights.

I would affirm.