Ryan C. HENRY, individually and on behalf of other similarly situated employees, Plaintiffs,

v.

QUICKEN LOANS, INC., a Michigan corporation, and Daniel B. Gilbert, personally and individually, Defendants.

No. 2:04–cv–40346.

United States District Court, E.D. Michigan, Southern Division.

Dec. 24, 2008.

communications between Quicken Loan's vice-president David Carroll and Quicken's attorneys. If the Court affirms the Magistrate Judge's ruling, Quicken Loans will be required to produce documents involving communications between Mr. Carroll and Quicken's inside or outside counsel "related to [Mr. Carroll's] decision-making capacity on whether the Quicken Loans' mortgage bankers met the requirements of the FLSA's administrative exception." For the reasons stated below, the Court concludes that the defendants have waived their attorney client privilege solely with respect to communications between Mr. Carroll and Quicken's counsel related to Mr. Carroll's decision making capacity on whether Quicken's mortgage bankers met the requirements of the FLSA's administrative exception and will therefore affirm the magistrate judge's ruling.

Donald H. Nichols, Michele R. Fisher, Paul J. Lukas, Rachhana T. Srey, Robert L. Schug, Nichols Kaster, PLLP, Minneapolis, MN, Kathleen L. Bogas, Charlotte Croson, Law Offices of Kathleen L. Bogas, PLLC, Bingham Farms, MI, for Plaintiffs.

Jeffrey B. Morganroth, Mayer Morganroth, Morganroth & Morganroth, PLLC, Birmingham, MI, Robert P. Davis, Mayer Brown, Washington, DC, for Defendants.

## ORDER OVERRULING DEFENDANTS' OBJECTIONS AND AFFIRMING THE OPINION AND ORDER OF THE MAGISTRATE JUDGE GRANTING PLAINTIFFS' MOTION TO COMPEL

STEPHEN J. MURPHY, III, District Judge.

Before the Court is the defendants' appeal from Magistrate Judge Pepe's Opinion and Order, dated June 30, 2008, granting plaintiffs' motion to compel.

In his Opinion and Order, Magistrate Judge Pepe found that by making certain assertions in a summary judgment brief, Quicken Loans had waived its attorney client privilege with respect to some, but not all,

## FACTS AND PROCEDURAL HISTORY

This is a Fair Labor Standards Act ("FLSA") overtime collective action brought under 29 U.S.C. § 201 et seq., involving approximately 422 plaintiffs who worked as "loan consultants" or "mortgage bankers" for defendant Quicken Loans, Inc. ("Quicken"). Plaintiffs claim that during their employment as loan consultants, Quicken unlawfully withheld wages from them by denying them overtime pay for hours worked in excess of 40 hours per week, in violation of § 207(a)(1) of the FLSA. The plaintiffs claim that they suffered a loss of wages as a result of this practice and ask for judgment against defendants in an amount equal to the plaintiffs' unpaid back wages at the applicable overtime rate. Because the plaintiffs are also asserting that Quicken's failure to pay overtime wages was in willful violation of the FLSA, they are, in addition, seeking an equal amount as liquidated damages, a three year limitation period and all costs and attorneys fees incurred prosecuting this claim. It is the claim of willfulness that is relevant to the instant motion.[1]

### A. Interrogatories and Requests

Plaintiffs have served Quicken with various interrogatories and document requests.

---

1. There are several other summary judgment motions by defendants, and one by plaintiffs, as well as objections to several reports and recommendations, all currently pending before the court.

Those relevant to this motion seek information related to Quicken's efforts to determine whether its decision not to pay overtime compensation to the plaintiffs complied with the FLSA and whether that decision by Quicken was made in good faith, or on the contrary, was a willful violation of the FLSA. The relevant requests and Quicken's responses have been submitted as exhibits to plaintiffs' present motion to compel and are as follows:

**Interrogatory 6:** To the extent Defendant is relying on attorney advice for its good faith defense to liquidated damages and willful conduct, identify and describe all conversations and correspondence with counsel that was relied upon.

**Answer 6:** Defendants object to this interrogatory because it requests information that is subject to the attorney-client privilege. Defendants further object to this interrogatory to the extent that it seeks information regarding a good faith defense to "willful conduct" because under the FLSA, Plaintiff has the burden of demonstrating that Defendants engaged in willful conduct. Notwithstanding these objections, and without waiving it [sic], Defendant Quicken Loans, Inc. sought and received attorney advice on the classification of loan consultants but it is not prepared at this point to waive the attorney-client privilege with respect to these communication inasmuch as the issue is not ripe for determination.

**Request 20:** All documents that identify or describe all efforts taken by Defendant to determine whether or not it was in compliance with the Fair Labor Standards Act and other wage laws by not paying Plaintiffs overtime compensation.

**Answer 20:** Defendant Quicken Loans, Inc. objects to this Request to the extent that it seeks information that is subject to the attorney-client privilege. Defendant is conducting its investigation, and based on its knowledge and review of the records to date, has no documents which are responsive. Notwithstanding this, to the extent that Defendant discovers responsive, non-privileged documents, Defendant will produce them subject to the entry of an appropriate protective order.

**Request 25:** All documents that identify, describe or relate to any claim that Defendant's method of compensating loan consultants was not a willful violation of the FLSA and was performed with a good faith belief that Defendant was complying with the FLSA.

**Answer 25:** Defendant Quicken Loans, Inc. objects to this Request because it requests information that is subject to the attorney-client privilege. Defendant further objects to this interrogatory to the extent that it seeks information regarding a good faith defense to "willful conduct" because under the FLSA Plaintiff has the burden of demonstrating that Defendant engaged in willful conduct. Notwithstanding these objections, and without waiving it, Defendant Quicken Loans, Inc. is not prepared at this point to waive the attorney client privilege with respect to these communications inasmuch as the issue is not yet ripe for determination.

(Exhibits 1 and 2, Motion to Compel)

## B. *The David Carroll Deposition*

On February 8, 2005, plaintiffs deposed David Carroll as Quicken's corporate designee pursuant to Fed.R.Civ.P. 30(b)(6). Portions of the Carroll Deposition were offered by defendants in support of their motion for summary judgment on good faith. Magistrate Judge Pepe cited sections of the deposition dealing with Mr. Carroll's decision to classify the mortgage brokers as exempt in his Opinion and Order. These sections are reproduced here:

Q. And who is involved in the decision to categorize them as exempt?

A. Myself and in-house counsel.

Q. Mr. Chyette?

A. Yes.

Q. And when was that decision made?

A. When the position—initially when the position was created.

Q. And when was that?

A. In January, late '95, early '96.

Q. And why was the decision made to categorize them as exempt?

A. This was a new position at the time. Based on the job duties as described to us, we, in consultation with him, determined that based on the administrative exemption that the loan consultants fit the administrative exemption.

(Dkt.# 491, Ex. 11, 60:13–61:4.)

Q. Prior to the spring-summer 2002, was there an occasion that you can recall in which a review was conducted regarding the propriety of the exempt categorization of loan consultants?

A. No formal reviews, but Richard Chyette and I have a work relationship and he would advise me of various happenings in the law, such as the Department of Labor's 2001—I guess it was a letter in 2001, and I remember him telling me about some letter that came out that confirmed that the administration exemption administrative exemption is acceptable for loan officers, and that the Department of Labor had been pretty consistent saying that stock brokers are—fit under the administrative exemption because of their relationship with clients, and Richard and I would talk about that, compare our loan consultants to stock brokers. We'd have those types of informal conversations. I couldn't tell you specifically when or specifically what legal issues we discussed, but we would—those types of informal conversations would be pretty frequent between Rich and I over the years.

(*Id.* at 64:7–65:2.)

Q. What was it about—what did you and Mr. Chyette decide was different about your loan consultants as opposed to the loan originators described in the Conseco case?

A. Several different things. Based on our reading of the case, it seemed like the loan, the loan officer's job in Conseco was not nearly as involved or complex as ours, as the loan consultants in our case.

(*Id.* at 67:1–8.)

Magistrate Judge Pepe noted that "[a]t this point in the deposition it would appear that Mr. Chyette was a joint decision-maker with Mr. Carroll, but after a recess, defense counsel Perry clarified what they asserted was the different roles of Mr. Carroll and Mr. Chyette." Opinion and Order at 10.

BY MR. PERRY:

Q. Mr. Carroll, you're still under oath. I'd like you to clarify what you meant when you had said that you and Richard Chyette made certain decisions.

A. Well, Richard Chyette is the in-house counsel, and on matters such as classification of employees as to exempt and nonexempt status, I would consult with him, and he'd continually provide me updates on the law, but ultimately the decision—I made the decision. When I say we made them or whatever I said, I consult

with him but I make the decision.

Q. Thank you.

(*Id.* at 104:7–18.) [2]

### C. *Defendants' Motion for Summary Judgment: Good Faith and Lack of Willfulness*

Late last year the defendants moved for summary judgment on the grounds of good faith and lack of willfulness (the "Good–Faith Motion"). In their Good Faith Motion, defendants argue that in reaching its decision to classify mortgage bankers as exempt from the overtime requirements of the FLSA, Quicken relied in good faith on a series of regulatory pronouncements by the Department of Labor, in particular a September 2006 opinion letter from that agency. Quicken's Good Faith Motion is still pending. If the court grants the defendants' Good Faith Motion, the plaintiffs cannot recover for any claim to overtime compensation after September 8, 2006, for violations outside the two-year time limit, and cannot recover liquidated damages.

In the Good Faith Motion, the defendants identified David Carroll as the sole individual who advised the defendants regarding their classification of loan consultants. In support of their motion, the defendants filed a declaration by David Carroll, as well as certain deposition testimony by Mr. Carroll. The declaration states that although Carroll is an attorney by training, he does not regularly act as Quicken's legal representative, and that part of his responsibility is to "analyze and work through issues that have a legal component." Carroll decl. ¶ 2. The declaration then sets forth the steps that Mr. Carroll asserts he took, and the factors that he considered, in determining that the loan consultants or "web mortgage bankers" met the requirements of the FLSA's administrative exception, and therefore did not have to be paid overtime compensation. Carroll states that he reached his decision based in part on a periodic review of the Company's compensation policies and practices, the mortgage bankers job duties, federal regulations dealing with the FLSA white collar exemptions, opinion letters, comparison with other financial sector jobs and certain expert testimony. *Id.*, ¶ 12. The declaration states in four different places that Mr. Carroll reached his determination based in part on "ongoing consultation with the Company's legal and HR departments." *Id.*, ¶¶ 12, 16, 20 and 24.

### B. *Plaintiffs' Motion to Compel*

Plaintiffs responded to Quicken's Good Faith Motion by arguing that Quicken had waived its attorney client privilege by its arguments and the evidence that Quicken offered in support of its Good Faith Motion. Plaintiffs also offered in opposition an affidavit pursuant to Fed.R.Civ.P. 56(f) stating that the facts needed to determine whether there is factual support for Quicken's motion are solely within the defendants' control, and given the asserted waiver of privilege, plaintiffs needed additional discovery to respond adequately to the Good Faith Motion.

Shortly thereafter, plaintiffs filed this motion to compel. In their motion to compel, plaintiffs argue that Quicken waived the attorney client privilege with respect to issues regarding the decision to classify mortgage bankers as exempt under the FLSA by asserting a defense of good faith and by submitting the declaration of Mr. Carroll, who is a lawyer by training, and had elsewhere been identified as a member of Quicken's legal team. Plaintiffs argue that "[b]y submitting the affidavit of attorney David Carroll in support of a motion for summary judgment, Defendants placed the factual material over which they asserted the attorney-client privilege directly at issue, and in doing so, waived the privilege". Motion to Compel at 6.[3]

**2.** The Court notes that a waiver of the attorney client privilege might be found based upon Carroll's responses to these deposition questions because he reveals the substance of certain conversations between counsel and himself regarding the classification of the mortgage bankers. *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (holding attorney client privileged waived where executive testified in his deposition about some discussions with counsel on the company's interpretation of the FLSA). Neither party briefed the issue and the magistrate judge did not address the issue, and therefore, the Court will not analyze it, either.

**3.** The Motion to Compel also dealt with issues regarding e-discovery procedures, costs, and the failure of defendants to produce a privilege log,

On June 30, 2008, the magistrate judge issued an opinion and order granting the plaintiffs' motion to compel, finding that Quicken had waived its attorney client privilege with regard to discussions between Mr. Carroll and counsel regarding the decision to classify the mortgage bankers or loan consultants as exempt for purposes of the FLSA. It is this opinion and order that is before the Court today.

D. *The Joint Order and Stipulation of September 11, 2008 Has Resolved All Discovery Issues Except the Question of Waiver*

Events following Magistrate Judge Pepe's Opinion and Order have narrowed the issues before this Court. On September 11, 2008, Magistrate Judge Pepe entered a stipulation and joint proposed order regarding email production and computer forensics expert's invoices. In their stipulation, the parties agreed to resolve all outstanding discovery issues except for the narrow issue of waiver presently before the Court. Further, the defendants have agreed to provide plaintiffs with a privilege log by identifying those relevant documents withheld from plaintiffs on the grounds of attorney client privilege.

**ANALYSIS**

Under 28 U.S.C. § 636, pretrial matters determined by a magistrate judge may be reconsidered by the district court "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636. The question of whether the attorney-client privilege has been waived is a question of law. *In re Powerhouse Licensing, L.L.C.*, 441 F.3d 467, 472 (6th Cir.2006). In applying this standard, however, the Court is mindful that Magistrate Judge Pepe is highly familiar with the facts of this case, and in particular with the discovery history that is reflected on the docket. The Magistrate Judge has dealt with numerous discovery motions and has been personally involved in untangling the great majority of discovery knots. His opinion and recommended order is a model of clarity, and has reduced the issues between the parties to the single, although difficult, issue that the Court currently faces.

A. *Magistrate Pepe's Opinion and Order Granting Plaintiffs' Motion to Compel*

On June 30, 2008, Magistrate Judge Pepe issued an Opinion and Order granting plaintiffs' motion to compel on the grounds that Quicken had waived by implication its attorney client privilege by its Good Faith Motion and the documents offered in support of that motion.

Magistrate Judge Pepe considered and rejected plaintiffs' argument that defendants had waived their attorney client privilege by asserting their defense of good faith and non-willfulness. He found rather that the mere assertion of a defense of good faith, as opposed to a defense of good faith reliance on the opinion of counsel, does not waive the privilege as to communications with counsel.

The Magistrate Judge also considered and rejected plaintiffs' assertion that the filing of the Carroll declaration by itself constituted a waiver as to communications between Mr. Carroll and outside counsel, and found that the mere assertions in Mr. Carroll's declaration of his "ongoing consultations with the Company's legal and HR departments" did not, on their own, cross the line into waiver-although he found that Quicken approached the line by offering this evidence.

Magistrate Judge Pepe found, however, that Quicken took an additional step in its briefing that *did* result in a waiver of the attorney client privilege as to communications concerning the determination to classify the mortgage brokers as exempt. According to Magistrate Judge Pepe, Quicken went too far by citing to Mr. Carroll's deposition testimony submitted in support of its Good Faith Motion and arguing in its motion that when Mr. Carroll determined the exempt status of the mortgage bankers, he "confirmed his understanding of these sources with in-house and outside legal counsel." Good Faith Motion at 6 (citing Carroll dep. at 104 (Good Faith Motion Ex. D)). The Court notes that the excerpt of Mr. Carroll's deposition cited by the magistrate does not explicitly state

but all these peripheral issues have been resolved by the joint stipulation and order.

that Mr. Chyette confirmed Mr. Carroll's understanding of the law, but rather states that Mr. Carroll consulted with Mr. Chyette, that Mr. Chyette provided Mr. Carroll with updates on the law, but that Mr. Carroll ultimately made the decision as to classification. The Magistrate Judge found that by asserting Carroll had "confirmed his understanding" of the sources for his decision on the exempt status question with in-house and outside counsel, the defendants "reveal[ed] by direct implication the *content* of those communications." Opinion and Order at 14 (emphasis original). By doing so, the Magistrate Judge found, Quicken made the decision and took the affirmative step to make the content of privileged communications a basis of its defense and thereby waived the privilege as to such communications.

Quicken has objected to the Opinion and Order on the grounds that it failed to follow the established rule that implied waivers of the attorney client privilege are to be construed narrowly. The defendants assert that the Magistrate Judge found waiver by the defendants' use of the term "confirmed" in a single brief. They argue that the word "confirmed" is ambiguous.[4] They assert that it says nothing about the content of Mr. Carroll's discussions with counsel to say that, by means of those discussions, Mr. Carroll "supported" his understanding of certain legal and factual sources. In fact, defendants argue that " 'confirmed' precludes only one scenario—that every attorney Mr. Carroll spoke with was diametrically opposed to his understanding of every source discussed." Defendants' Objections to June 30, 2008 Opinion and Order at 6.

Defendants also argue that it is inconceivable that the use of the word "confirmed" in its good faith brief would force defendants to draw upon the privileged material at trial to prevail because (1) the key sentence in the good faith brief is supported by Mr. Carroll's declaration, which the Magistrate Judge had concluded did not waive the attorney client privilege, and (2) the Magistrate Judge noted that defendants had already made a strong case for good faith in their brief, making it

unnecessary to draw upon privileged material at trial. The Court finds that while both of these arguments are well constructed, neither is persuasive. In the first place, the sentence in the brief cites to Mr. Carroll's deposition testimony, and not his declaration. Second, the relevant use of the material is here in the context of the legal arguments over summary judgment. The privileged material does not have to be proffered at trial to constitute a waiver, despite some legal dicta to the contrary, which will be addressed below.

Defendants also argue that the Magistrate Judge inappropriately chose a ground for granting the motion that had not been urged by the plaintiffs. Defendants point out that the plaintiffs never pointed to the "confirmed" language in defendants' brief in its motion to compel, and therefore the magistrate judge has found waiver without the benefit of briefing of the party. The parties, however, have since the ruling of Magistrate Judge Pepe extensively briefed the subject and were afforded the opportunity of a lengthy hearing before the Court. Accordingly, the argument is now moot.

### B. *The Attorney–Client Privilege*

There is no dispute here that the attorney-client privilege applies to confidential communications between Quicken Loans and its in-house and outside counsel. The question before the court is whether Quicken Loans waived the privilege as to certain communications between David Carroll and Quicken's legal counsel by implication pursuant to its conduct in this litigation.

### C. *New Rule 502 of the Federal Rules of Evidence*

■ Since briefing was completed on this matter, the Federal Rules of Evidence were amended to include a specific rule, Rule 502, dealing with waiver of the attorney client privilege, which provides in relevant part:

> The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the

---

4. The American Heritage Dictionary definition of "confirmed" is "[t]o support or establish the certainty or validity of; verify." Defendants' Objections at 5.

attorney-client privilege or work-product protection.

(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver

When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:

1. the waiver is intentional;

2. the disclosed and undisclosed communications or information concern the same subject matter; and

3. they ought in fairness to be considered together.

(b) Inadvertent disclosure.

When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:

1. the disclosure is inadvertent;

2. the holder of the privilege or protection took reasonable steps to prevent disclosure; and

3. the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

. . .

Fed.R.Evid. 502.

The new rule became effective on September 19, 2008, but it applies to cases currently pending "insofar as is just and practical." Act of September 19, 2008, Pub.L. No. 110–322, 122 Stat. 3537 (2008). The notes to the rule provide that the rule "is not intended to displace or modify federal common law concerning waiver of privilege or work product where no disclosure has been made" and specifically notes that it is not intended to overturn precedent dealing with implied waiver by the assertion of an advice of counsel defense. See Explanatory Note on Evidence Rule 502 Prepared by the Judicial Conference Advisory Committee on Evidence Rules. Since the magistrate judge concluded that Quicken had waived the attorney client privilege by putting the content of the advice of counsel at issue in this litigation rather than by disclosing the content of the communications, the Court finds that analysis of the issue is not affected or changed by the enactment of Rule 502.

## D. Doctrine of Implied Waiver

■ As discussed previously, the magistrate judge's ruling is based on his finding that the defendants had impliedly waived the attorney-client privilege as to communications between Carroll and Quicken's counsel concerning the classification of mortgage brokers as exempt from overtime pay under the FLSA. The law is clear that the attorney-client privilege can be waived by conduct such as partial disclosures which would make it unfair for a client to invoke the privilege elsewhere. 1 McCormick on Evidence § 93. The principle, however, becomes difficult in its practical application:

> While there can be no doubt of the desirability of a rule preventing a party from relying upon the advice of counsel as a basis of a claim or defense while at the same time frustrating a full exploration of the character of that advice, the problem of defining when such an issue has been interjected is an extremely difficult one. The cases are generally agreed that filing or defending a lawsuit does not waive the privilege. By contrast, specific reliance upon the advice either in pleading or testimony will generally be seen as waiving the privilege.

1 McCormick on Evidence § 93 (6th Ed.2006).

The applicable legal standard governing waivers of the attorney client privilege is articulated in the recent Sixth Circuit case of *In re Lott*, 424 F.3d 446, 450 (6th Cir.2005). *In re Lott* was a mandamus action filed by a habeas petitioner who sought reversal of the order of the district court finding that he had waived his attorney client privilege by asserting a claim of actual innocence in the habeas petition. The *Lott* court found that merely asserting a claim of actual innocence in a habeas petition did not effect a waiver of the attorney client privilege. In reaching its decision, however, the court discussed various

ways in which a trial court may find a waiver of the attorney-client privilege:

> The privilege may be waived expressly or by implication in several ways. Generally, "the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. In addition, a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir.2002) (internal citations omitted).

*In re Lott*, 424 F.3d at 452–53. The court then addressed specific instances where the privilege has been found to be waived:

> The privilege is held to be waived when a client attacks the quality of his attorney's advice through, for example, a civil defendant's pleading of an advice-of-counsel defense or a criminal defendant's appeal on grounds of inadequate legal representation. The doctrine is also invoked to waive a personal injury plaintiff's physician-patient privilege and to waive the psychiatrist-patient privilege of a criminal defendant pleading an insanity defense. These allegations have one thing in common: the pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail.

*In re Lott*, 424 F.3d at 453–54 (*quoting Developments in the Law–Privileged Communications, Implied Waiver*, 98 Harv. L.Rev. 1629, 1638 (1985)).

Applying these principles to the facts of the *Lott* case, the court found that Lott had not waived the attorney client privilege with respect to his communications with his trial counsel because Lott had neither disclosed the contents of his communications with counsel nor had he put his communications with his counsel "at issue" by making the communications a factual basis of a claim or defense. The court also noted that, as a matter of policy, implied waivers are to be construed narrowly, and the court "must impose a waiver no broader than needed to ensure the fairness of the proceedings before

it." *Id.* (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir.2003)).

Applying the standards set forth by the Sixth Circuit, Magistrate Judge Pepe found that simply by asserting a claim of good faith as an affirmative defense does not imply reliance on counsel even where the party asserting the claim acknowledges seeking such advice—*but only where the party puts the content of that advice behind its claim of good faith.* Opinion and Order at 7. Thus, the magistrate judge here found that neither Quicken's affirmative defense of good faith nor its answers to interrogatories waived the attorney client privilege, because neither made attorney client communications a factual basis of Quicken's defense. The magistrate judge also rejected the plaintiffs' broad assertion that the Carroll affidavit as a whole waived the privilege, and additionally found that the four references in the affidavit to ongoing consultation with the Company's legal and HR departments, while approaching the line of implied waiver did not, by themselves, and without more about the *content* of such communications, constitute an implied waiver of the attorney client privilege.

Magistrate Judge Pepe did, however, find that statements by the defendants in their Good Faith Motion provided what he called the "plus factor" that pushed the defendants' assertions into an area of implied waiver. Specifically, in their Good Faith Motion, the defendants, when describing Mr. Carroll's efforts to classify Quicken's mortgage brokers, stated that Mr. Carroll relied upon a number of sources and that "Mr. Carroll confirmed his understanding of these sources with in-house and outside legal counsel. Carroll Dep., Ex. D at 104" Opinion and Order at 14 (quoting Good Faith Motion at 6). Magistrate Judge Pepe found that assertion of the opinions by in-house and outside legal counsel "confirmed" Mr. Carroll's understanding on the exempt status question and "reveal[ed] by direct implication the *content* of those communications." Opinion and Order at 14 (emphasis original). From this statement, Magistrate Judge Pepe found that Quicken had "made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue" and had

made the content of the opinions of in-house and outside legal counsel "a factual basis in support of Mr. Carroll's good faith in his understanding on the exempt status question. It reveals that these opinions confirm the position and understanding of Mr. Carroll. Thus, it is the content of the privileged communications that is used as a sword' as stated in *Ross*." *Id.* at 15 (*quoting Ross v. City of Memphis*, 423 F.3d 596, 604–05 (6th Cir.2005)).

While Magistrate Judge Pepe's analysis is supported by relevant case law in the district, the magistrate judge himself recognized that the question of waiver here is a close one, and he additionally found that Quicken had just done enough to step over the line of privilege waiver. The question for the Court, therefore, is to resolve whether the magistrate judge's ultimate determination that Quicken has stepped over the line is proper, or if, contrary to the finding of the magistrate judge, Quicken has remained safely on the side of non-waiver.[5] As it must, the Court has fully reviewed cases in the Sixth Circuit as well as others that have dealt with the implied waiver of attorney client privilege to determine exactly where the line should properly be drawn. Analysis of the cases confirms that the magistrate judge applied the standard correctly in concluding that a waiver of the attorney client privilege occurred in this case.[6]

Cases in other circuits are in accord with the holding in *Lott* that merely filing a suit that places a party's state of mind at issue is insufficient to constitute a waiver of the attorney client privilege. *See, e.g., Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 861 (3rd Cir.1994) (in declaratory judgment action by insured against insurance company for coverage under general liability insurance policies, insured did not waive attorney client privilege merely by fil-

---

5. At a hearing held before the Court on the defendants' objections to the magistrate judge's order, attorneys for Quicken argued that the word "confirmed" in their Good Faith Motion was too inadvertent to constitute the type of voluntary and willful injection of the substance of the communications between the attorney and the client to constitute a waiver. Quicken also suggested that the Court strike the word "confirmed" from their argument. But "[o]nce the attorney-client privilege is waived, the privilege is generally lost for all purposes and in all forums," *Genentech, Inc. v. United States International Trade Comm'n*, 122 F.3d 1409, 1416 (Fed. Cir.1997), and the Court finds itself obligated to determine whether waiver occurred and go forward rather than to fix things should the facts add up to a waiver in the case.

6. The case which is the closest to being on point, but which does not reach the ultimate issue here, is *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir.1999). *Nguyen* was a Fair Labor Standards Act case brought by hourly workers alleging that they were entitled to payment for time spent dressing in protective clothing and washing themselves and their equipment at the end of their shifts. Excel asserted two affirmative defenses. First, it argued that, consistent with 29 U.S.C. § 259 its actions were in good faith conformity with and reliance on administrative practice regarding the class of employers to which it belonged. Second, it asserted that its employees were not entitled to liquidated damages because its actions were in good faith and it had reasonable grounds for believing that its acts and omissions did not violate the FLSA. The plaintiffs contended that the Excel executives that were deposed were unable to articulate the basis of the company's good faith belief without stating their reliance upon counsel or taking a break to confer with counsel during their depositions. The magistrate judge there initially denied leave to depose defense counsel until other avenues of discovery had been exhausted, but later the magistrate granted leave to depose the lawyers. The district court overruled the defendants' objections, and they appealed. On appeal, the plaintiffs argued that the defendant's invocation of the affirmative defense of good faith places at issue all the steps that Excel took to ascertain what was required by the FLSA and those issues included the solicitation of legal advice as to whether Excel's actions would comply with the FLSA.

But the *Nguyen* court did not reach the issue of whether the assertion of a good faith defense to the FLSA alone was sufficient to place communications between the attorney and client at issue because the Fifth Circuit was able to resolve the case on narrower grounds. It therefore affirmed the district court and found that the attorney client privilege had been waived because Excel executives had testified without objection from counsel as to some of the substance of the advice of counsel. Because there was pretrial disclosure of the substance of the attorney client communication, the court did not reach the issue of whether the assertion of the affirmative defense of good faith was sufficient to waive the attorney client privilege with regard to the communications with counsel on the topic which is at issue in *this* case: the basis for the client's asserted good faith belief that his actions were not in violation of the FLSA.

ing suit where an issue in case was whether insureds knew, before obtaining coverage, that products of subsidiary were causing transmission of HIV). The court in *Rhone–Poulenc* articulated the reasoning behind finding an implied waiver when a party places the advice of its attorney at issue:

> [In cases where the privilege was deemed waived] "the client had made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client had opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant matter. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."

*Rhone–Poulenc*, 32 F.3d at 863 (citations omitted).[7] The court found that such a standard encourages predictability in the privilege by providing certainty "that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege ..." *Id. See also United States v. White*, 887 F.2d 267, 270 (D.C.Cir.1989) (defendant that puts government to its proof on subject of criminal intent does not waive attorney client privilege absent asserting reliance of counsel defense); *United States Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3rd Cir.1999) (rejecting defendants' argument that mere filing of arguably untimely interpleader action by plaintiff insurers, which raised issues of laches, waived insurers' attorney client privilege as to issues of why action was brought when it was).

Similarly, in *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097–1098 (7th Cir.1987), the court of appeals found that the district court had erred in finding that the defendant insurance company had waived the attorney

client privilege by offering the testimony of its former attorney to show that the insurance company had attempted to settle the insureds' claim after suit had been filed as rebuttal evidence to the insureds' allegations of bad faith. The court found that such testimony did not put at issue any confidential communications because the insurer's evidence did nothing more than deny the plaintiffs' allegations that the insurer had failed to pay after the suit was filed and had improperly "packaged" the punitive damages claim with a compensatory damages claim. The court noted that "Valley Forge did not assert that the offer to settle was made in good faith—it did not have to.... Offering to show that a post-filing offer of settlement had been made does not inject a new legal or factual issue into the case. The settlement offer is merely a new form of evidence to counter an issue injected by the plaintiffs." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d at 1098.

On the other hand, courts have found that when a party offers an affirmative defense involving state of mind that is in some way predicated on the advise of counsel, such an action may waive by implication the attorney client privilege as to the subject matter of such advice. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991). In *United States v. Bilzerian*, the defendant was convicted of securities fraud, making false statements to the Securities and Exchange Commission (SEC) and conspiracy to defraud the SEC and the Internal Revenue Service. At trial, the defendant argued that he did not intend to violate the securities laws, but believed that the financing structure of the transactions would allow him to legally avoid disclosure to other investors, and that describing the source of the funds used as "personal" was also legal. Bilzerian filed a motion in limine seeking a ruling that he could testify regarding his belief that his actions were lawful without being subject to cross-examination on communications he had with his attorney on the subject. The trial court declined to rule on the subject in the abstract and held that if Bilzerian testified as

---

7. The Tenth Circuit has characterized the *Rhone Poulenc* test as the most restrictive of the tests dealing with implied waiver. *Frontier Refining,* *Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 699 (10th Cir.1998).

to his good faith regarding the legality of the disclosures, that would open the door to cross-examination regarding the basis for his belief and such cross examination would allow inquiry into communications with his attorney on this subject. As a result, Bilzerian did not testify as to his good faith belief that his actions were lawful and he was convicted. On appeal, Bilzerian argued that the testimony that he sought to introduce would not have disclosed the content, or even the existence, of any privileged communications or assert a reliance on counsel defense, and that the attorney client privilege would not be waived and that it was therefore reversible error for the trial court to deny his motion in limine to protect the privilege.

The Court of Appeals disagreed, holding that "the attorney client privilege cannot at once be used as a shield and a sword." *Bilzerian*, 926 F.2d at 1292. It held that the waiver principle was applicable because "Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.* The court distinguished the D.C. Circuit's opinion in *White*, and found that the district court's ruling *Bilzerian* "did not prevent defendant from denying criminal intent; the district judge merely said that Bilzerian's own testimony as to his good faith would open the door to cross-examination, possibly including inquiry into otherwise privileged communications with his attorney." *Id.* at 1293. The court also noted that in *White* the privileged communications were admitted at trial, which allowed the appellate court an opportunity to assess whether the defendant's case was actually prejudiced. *Id.* Since the trial court was correct that it could not hold that the attorney client privilege would not be waived no matter what developed in direct testimony, courts could therefore not sanction the use of a privilege to prevent effective cross-examination on matters reasonably related to those developed on direct.

Finally, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir.1992) was a suit by Chevron challenging the adequacy of Pennzoil's disclosures under Section 13(d) of the Securities and Exchange Act of 1934 and the Hart–Scott–Rodino Antitrust Improvements Act of 1976. The Ninth Circuit found that when Pennzoil moved for summary judgment on Chevron's claim of failure to comply with Schedule 13D, and asserted that it was reasonable to acquire stock in Chevron for investment purposes only—and that it took this position in part in reliance on the advice of their tax attorneys—that Pennzoil had waived the attorney client privilege as to the tax advice it received. In support of this conclusion, the court of appeals cited *Bilzerian*, and held that insofar as Pennzoil relied upon the advice of counsel to support the reasonableness of its Schedule 13D, Pennzoil waived the attorney-client privilege with respect to those communications. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d at 1162–63. *See also Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir.1994) (citing *Bilzerian* and stating that "[s]imilarly, in the present case, USX could have denied criminal intent without affirmatively asserting that it believed that its change in pension fund policy was legal. Having gone beyond mere denial, affirmatively to assert good faith, USX injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege.").

■ While *Bilzerian* and *Chevron* are not binding precedent here, they are persuasive authorities and fully consistent with the standards outlined in *Lott.* Together, they stand for the principle that when a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice "at issue" and thereby waives the attorney client privilege on the narrow subject matter of those communications.

Applying the principles of these cases to the facts at issue here, the Court holds that Quicken's motion for summary judgment on

the issue of good faith waived its attorney client privilege with respect to communications between Carroll and the Quicken attorneys on the issue of classification of the mortgage bankers for purposes of the administrative exemption in the FLSA. By accompanying the motion with the Carroll affidavit that stated that the decision to classify the mortgage bankers as exempt was made in ongoing consultation with counsel and arguing in the motion that Quicken's attorneys confirmed Carroll's understanding of the regulations, Quicken has affirmatively asserted advice of counsel as a basis for its good faith. The statement that counsel "confirmed" Carroll's understanding merely makes explicit the reason Quicken included the consultations with attorneys in the affidavit in the first place—because it reinforces Quicken's good faith efforts to comply with the applicable regulations.

By including consultations with counsel as a basis for its good faith, Quicken has transformed the defense of good faith into a "good faith reliance on counsel" defense. Once the defendant has relied (even in small part) on privileged communications to make its case, fairness requires that the privilege be put aside in order for the plaintiff to test the defendant's contentions. The Sixth Circuit has stated that an important policy behind its decisions in this area is enhancing predictability of the privilege, consistent with the purpose of the privilege in encouraging communications between the counsel and client. *Ross*, 423 F.3d at 603–04. The Court's ruling here enforces this policy, because it leaves the decision to waive the attorney client privilege in the hands of the person holding the privilege. Quicken chose to inject the advice of its counsel into this litigation by relying on it to reinforce its motion for summary judgment, and therefore it should not be a surprise to find that the privilege has been waived. *Compare Claffey v. River Oaks Hyundai*, 486 F.Supp.2d 776 (N.D.Ill.2007) (holding that mere denial of claim of willfulness in violating Fair Credit Reporting Act does not waive attorney client privilege, but privilege would be waived if defendant submitted evidence of consultation with counsel with regard to policies and practices at issue) *with Williams v. Sprint/United Management*

*Co.*, 464 F.Supp.2d. 1100 (D.Kan.2006) (no waiver where defendant asserted that it would not rely for purposes of good faith defense on any evidence of consultation with counsel that would open door to inquiry by plaintiff that might cause defendant to assert privilege).

## CONCLUSION

For all these foregoing reasons, the Court overrules the defendant's objections and affirms the order of the magistrate judge granting plaintiffs' motion to compel.

**SO ORDERED.**