INTERNATIONAL UNION, UNITED AU-
TOMOBILE, AEROSPACE, AND AGRI-
CULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW); and Thomas
Bode, Bruce Eaton, William Burns, Pe-
ter Antonellis, and Larry Preston, for
themselves and others similarly-situat-
ed, Plaintiff,

v.

HONEYWELL INTERNATIONAL
INC., Defendant.

Civil Action No. 11–14036.

United States District Court,
E.D. Michigan,
Southern Division.

Signed June 12, 2014.

Stuart M. Israel, John G. Adam, Legghio & Israel, P.C., Royal Oak, MI, William A. Wertheimer, Jr., William A. Wertheimer Assoc., Bingham Farms, MI, for Plaintiff.

Daniel M. Share, Eugene Driker, Barris, Sott, Detroit, MI, Kenneth W. Allen, Kirkland & Ellis LLP, Washington, DC, for Defendant.

### ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY [63]

DAVID R. GRAND, United States Magistrate Judge.

Before the Court is Plaintiffs International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, Thomas Bode, Bruce Eaton, William Burns, Peter Antonellis and Larry Preston's ("UAW") motion to compel the discovery of certain attorney-client privileged communications of Defendant Honeywell International, Inc. ("Honeywell"). [63]. The motion was referred to this Court for hearing and disposition pursuant to 28 U.S.C. § 636(b)(1)(A). [81]. On May 21, 2014, the Court held a hearing on the matter and both sides presented argument. The motion is now ready for disposition. For the following reasons, the Court DENIES the UAW's motion. [63].

## I. BACKGROUND

### A. Factual [1]

This case arises out of a series of collective bargaining agreements ("CBA") entered into between the UAW and Honeywell between 2003 and 2011. The individual plaintiffs are retired hourly employees of Honeywell and its predecessors. For over 50 years, the UAW has represented these and thousands of other retired Honeywell employees in collective bargaining negotiations and the UAW and Honeywell have entered into a series of CBAs negotiated every three to four years.

The instant action arises out of language first incorporated into a CBA negotiated in 2003. That year, the parties agreed to include the following provision in the CBA:

The Company's contribution for health care coverage after 2007 for present and future retirees, their dependents, and surviving spouses covered under the UAW Honeywell Master Agreement shall not be less than (A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company actuary's 2003 estimate of the Company's retiree health care contribution in 2007, whichever is greater.

This language was incorporated not only into the 2003 CBA, but also the 2007 and 2011 CBAs. According to the complaint, the Honeywell negotiators believed this language represented a cap that would apply to both active and retired employees. The 2003 CBA also provided that any "Agreement concerning retiree health care costs and the company's obligation to bargain regarding retiree health care costs benefits shall not impair any existing legal rights that current retirees may have with respect to their post employment health care benefits." During the 2003 negotiations, the UAW represented that it had authority to bind retirees and the parties agreed the caps would apply to present and future retirees. Upon the UAW's insistence, the parties agreed to make the subject of retiree healthcare benefits a mandatory subject of bargaining for future CBAs.

In 2004 Honeywell was sued in United States District Court for the Northern District of Ohio by a class of retirees, dependents and surviving spouses from a facility in Ohio. As part of the settlement, Honeywell acknowledged the UAW's right to bargain for the class in the same manner that it bargained for existing retirees under the CBAs. Upon reaching the settlement agreement, the UAW represented to the Court that it could negotiate for the Ohio retirees in the same manner as for other retirees.

---

1. Much of this background is taken verbatim from the Court's March 28, 2013 Order on the UAW's Motion to Dismiss Honeywell's Counter-

claims. *Int'l Union v. Honeywell Int'l Inc.*, 195 L.R.R.M. 2620, 2013 WL 1303385, 2013 U.S. Dist. LEXIS 43954 (E.D.Mich. Mar. 28, 2013).

In 2005, Honeywell closed a facility in Cleveland, and the retirees were not covered under the master agreement. The parties agreed to subject these retirees to the healthcare benefit caps. The closing agreement indicated Honeywell's acknowledgement of the UAW's right to negotiate on behalf of the Cleveland retirees.

During both the 2007 and 2011 negotiations, the parties disagreed as to the scope of the caps. In 2007, the parties agreed to extend the effective date of the caps to 2012. Subsequently, the UAW distributed a letter to its membership stating it had won a contract that advanced the interests of both active and retired UAW members. In 2011, the parties again disagreed but did not change the cap language.

### B. Procedural

In July 2011, Honeywell filed an action in federal district court in New Jersey against the UAW, four retired employees and a putative class of similarly situated retirees, eligible dependents and surviving spouses, seeking a declaration that it had the right to limit healthcare contributions to retirees. On September 15, 2011, the UAW filed the instant action in this Court, claiming that Honeywell's actions constituted an anticipatory breach. It also filed a motion in the New Jersey action to dismiss it on the basis of improper forum. At a November 30, 2011 hearing before the New Jersey court, the UAW argued that it "doesn't bargain for retirees" and is not the "designated representative for retirees."

On December 16, 2011, the New Jersey district court dismissed Honeywell's complaint without prejudice finding that Michigan was the proper forum to litigate for the parties' dispute. As part of its ruling, the Court found that a departure from the first-filed rule was appropriate because Honeywell was improperly attempting to avoid less favorable Sixth Circuit case law. On appeal, the Third Circuit affirmed the district court's decision.

On January 30, 2012, Honeywell filed its answer to the UAW's complaint as well as its counterclaims, which alleged fraudulent misrepresentation, negligent misrepresentation and breach of implied warranty of authority under Michigan and New Jersey law. In March 2012, Honeywell amended its counterclaim to include a claim for fraudulent concealment.

The UAW moved to dismiss Honeywell's counterclaims, a motion that, on March 28, 2013, the Court granted in part and denied in part. 2013 WL 1303385, 2013 U.S. Dist. LEXIS 43954. The Court first found that none of Honeywell's claims were preempted by federal labor laws. *Id.* at *3–6, 2013 U.S. Dist. LEXIS 43954 at *9–17. It next found that certain of Honeywell's counterclaims were time-barred under the applicable statute of limitations, but that they survived to the extent that Honeywell had adequately pleaded a claim for fraudulent concealment. *Id.* at *6–9, 2013 U.S. Dist. LEXIS 43954 at *18–25. However, the Court nevertheless dismissed in their entirety Honeywell's claims for fraudulent and negligent misrepresentation, finding that Honeywell's claims rested not on an alleged misstatement of past or present fact (a necessary element for such claims) but on a misrepresentation of legal opinion, which was whether or not the UAW had the authority to bargain on behalf of retirees (which in turn rests on a legal opinion of whether the retirees' benefits were vested, as the Court noted that it is "well established that once retiree benefits have vested, such benefits cannot be bargained away"). *Id.* at *8–9, 2013 U.S. Dist. LEXIS 43954 at *25–27. The Court noted that "[a]llegedly false statements regarding the law are not actionable because they amount to nothing more than an opinion." *Id. citing Cummins v. Robinson Twp.*, 283 Mich.App. 677, 697, 770 N.W.2d 421 (2009).

At the same time, the Court upheld Honeywell's implied warranty of authority claim. *Id.* at *9–10, 2013 U.S. Dist. LEXIS 43954 at *27–29. In that claim, Honeywell alleges that the UAW implied it had authority to negotiate on behalf of retirees when it entered into the CBAs and submitted various filings in an unrelated action in Ohio, and that Honeywell undertook additional obligations in reliance on these representations of authority. The UAW argued that Honeywell's reliance was unreasonable in these cir-

cumstances because it was contrary to the CBA and federal labor law, which the UAW stated clearly prevented it from negotiating on behalf of or binding the retirees. The Court found, however, that there was no requirement under the law that reliance be reasonable, only that the misrepresentation be false, and that it actually deceive the complaining party and be relied on by him to his detriment. *Id.* Therefore, the claim withstood dismissal. *Id.*

During the course of discovery, the UAW propounded upon Honeywell a document request seeking: "all bargaining notes, proposals, and other collective bargaining documents, including internal memorandum, or documents that reflect collective bargaining matters" related to the 2003, 2007 and 20011 bargaining. [63 at 3]. Honeywell responded by producing non-privileged documents, along with a privilege log containing 1,629 entries, each asserting the attorney-client and/or work product privilege. [63 Ex. C]. In addition, it provided a redaction log containing 450 additional entries that had been redacted to remove alleged attorney-client or work product privileged information. [63 Ex. D]. According to Honeywell, several of its negotiators have testified that they did not seek advice from counsel on the validity of the UAW's representation that it had the authority to bargain on behalf of retirees. [73 at 1].

The UAW now moves to compel production of these alleged attorney-client and work-product privileged materials. The UAW argues that Honeywell, by asserting a breach of implied warranty claim based on its alleged reliance on the UAW's representations that it had authority to negotiate on behalf of retirees, must produce these documents under the doctrine of "at-issue waiver" of privilege. More specifically, the UAW argues that because the alleged misrepresentation constitutes a "legal opinion," and because the test for reliance under the applicable case law is a purely subjective one, Honeywell need only show that it actually relied on the UAW's statements in order to meet its burden on the reliance element of the test, not that its reliance was objectively reasonable. Honeywell can meet this burden

by having its negotiators testify, as at least some have done in deposition, that they did, in fact, rely on the UAW's representations and only those representations. The UAW argues that the only evidence in existence that could possibly rebut this testimony would be contained in the attorney-client protected communications on the subject between Honeywell and the 40+ attorneys it consulted during the relevant timeframe on issues related to the CBAs. The UAW argues that unless it is granted access to these communications, it will be severely hampered in its ability to defend against Honeywell's assertions of actual reliance.

For its part, Honeywell argues that these documents should remain protected, because it does not intend to offer evidence at trial regarding any communications, or even lack thereof, between its negotiators and counsel on the subject of the UAW's ability to negotiate for retirees. Instead, Honeywell claims it plans to meet its burden of actual reliance (as well as its burden of proving reasonable diligence to support its claim for fraudulent concealment) by pointing to the long bargaining history between the parties, the language of the CBAs, the discussions between the UAW and Honeywell negotiators, and the UAW's filings in unrelated court cases. Honeywell argues that because it does not intend to affirmatively utilize any of its confidential communications in this case it has not put those communications "at-issue." Therefore, it concludes, this Court should find it has not waived any privilege that might attach to those communications.

## II. ANALYSIS

### A. *Body of Law to Be Applied*

■ Before delving into the merits of the parties' arguments, the Court must first decide whether federal or state privilege law applies to this motion to compel. Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rules of decision." Thus, in cases brought in this Court on diversity grounds, state law will generally govern privilege issues. On the other hand, where jurisdiction is ground exclusively on the existence of a

federal question, federal privilege law governs. In cases like this one, where both federal law and state law claims are present,[2] the Federal Rules dictate that federal privilege law applies to all claims, in order to avoid conflicting application in the same case. *See* Fed.R.Civ.P. 501 advisory committee note ("Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case"). *See also Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir.1992) (holding that "in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation"). Therefore, the federal body of law of privilege applies to the question at issue here.

### B. At–Issue Waiver Standard under Sixth Circuit Law

■ The Sixth Circuit, in *In re Lott,* set forth the test to be applied to determine whether a party has impliedly waived the attorney-client privilege. *In re Lott,* 424 F.3d 446 (6th Cir.2005). After discussing the long history of the privilege and the way "implied" or "at-issue" waiver has historically been applied, the Sixth Circuit concluded that "[i]mplied waivers are consistently construed narrowly," and that courts "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Id.* at 453. While acknowledging that parties "cannot hide behind the privilege if they are relying upon privileged communications to make their case," the court restricted at-issue waivers to situations where "the holder of the privilege has taken some affirmative step to place the content of the confidential communication into the litigation." *Id.* at 454–55.

### C. Application of the Lott Standard

■ Applying the *Lott* standard to the case at bar, the Court concludes that Honeywell has not impliedly waived the attorney-client privilege with respect to the communications at issue.

When a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice "at issue" and thereby waives the attorney client privilege on the narrow subject matter of those communications.

*Henry v. Quicken Loans, Inc.,* 263 F.R.D. 458, 469 (E.D.Mich.2008) (finding waiver where defendant included evidence of consultations with counsel as part of basis for good faith reliance). In the instant case, however, Honeywell has repeatedly and unequivocally represented that it will not introduce into evidence either the existence or the content of any privileged communication in proving its claims or defending against the UAW's claims. In fact, Honeywell represents that it will not even introduce into evidence the *fact* that its negotiators did not have communications with counsel, let alone the content of any such communication. Therefore, because Honeywell has not taken, and has represented that it will not take any "affirmative step[s] to place the content of the confidential communication into the litigation," it has not waived the attorney-client privilege with respect to those documents. *See Lott,* 424 F.3d at 454–55; *Henry,* 263 F.R.D. at 470.

■ The UAW argues that there is little chance that a company as sophisticated as Honeywell, who consulted with as many as 44 attorneys during the pendency of these negotiations, did not communicate with its attorneys on the issue of the UAW's ability to bargain on behalf of retirees, and thus such privileged communications must exist. The Court does not opine on the likelihood of such communications existing, but simply notes that even if they do exist, their relevance alone is insufficient to outweigh the privilege Honeywell possesses over them, as the Sixth Circuit has solidly held that despite its potential relevance, privileged matter is not discoverable absent waiver, and implied waiver is to be narrowly construed. *Lott,*

**2.** While Honeywell's counterclaims are all premised upon state law, the underlying case was brought by the Union pursuant to the Labor Management Relations Act 29 U.S.C. § 185 and the Employee Retirement Income Security Act 29 U.S.C. § 1132. [1 at 2].

424 F.3d at 452. Honeywell must affirmatively place these communications at issue in the case for them to be discoverable. Unless and until that happens, the UAW is not entitled to them.[3]

Finally, the Court addresses the UAW's argument that without access to these privileged materials it will not be able to rebut Honeywell's claims of actual reliance. The Court acknowledges the UAW's point that the District Court has found the "actual reliance" prong of a breach of implied warranty claim to be wholly subjective in nature. *See UAW*, 2013 WL 1303385 at *9–10, 2013 U.S. Dist. LEXIS 43954 at *28 *citing Kaminskas v. Litnianski*, 51 Mich. App. 40, 47, 214 N.W.2d 331 (1973); *Maxman v. Farmers Ins. Exchange*, 85 Mich. App. 115, 122, 270 N.W.2d 534 (1978). The UAW argues that without access to these privileged materials, it has no way to rebut Honeywell's negotiator's testimony that he actually relied on the UAW's statements. While the Court appreciates the uphill battle the UAW must fight on this issue, it would fight one whether these materials remained privileged or, as Honeywell claims, do not even exist. The Court reiterates that there is presently no evidence that these communications do exist, as no one has testified to their existence, and at least some negotiators have specifically denied discussing the matter with counsel. If indeed there are no such communications, then there is nothing for the UAW to access in order to directly rebut Honeywell's claims of reliance, and the UAW would be left in the same position it finds itself in now, relying on circumstantial evidence to rebut Honeywell's reliance claims.

Second, the Court notes that while the case law does categorize actual reliance as being subjective in nature, this same case law cites directly to the Third Restatement of Agency, which finds that, in addition to direct evidence of subjective knowledge, "the circumstances surrounding the transaction, including inferences that a reasonable person would draw from facts known to the third party," as well as "the third party's experience and familiarity with relevant business practices," is also relevant to prove or disprove actual reliance. Restatement Third of Agency, § 6.10; *see also Kaminskas*, 51 Mich.App. at 47, 214 N.W.2d 331. These are all areas that the UAW can explore and exploit at the merits stage of the proceeding. In fact, in the present motion, the UAW points to the timing of Honeywell's declaratory judgment action, the number of attorneys Honeywell retained and their quality, the number of times it communicated with its attorneys, the well-settled nature of the law as to the UAW's authority to bind retirees, as well as other outward representations by Honeywell on the subject of authority to bargain, all of which constitutes circumstantial evidence that could be used to rebut Honeywell's claims of actual reliance. And indeed, while the UAW will be free to make these same arguments at the merits stage of the proceedings, it would seem that Honeywell would be unable to directly attack these arguments without drawing in the very communications it seeks to protect. *Henry*, 263 F.R.D. at 470 ("Once the defendant has relied (even in small part) on privileged communications to make its case, fairness requires that the privilege be put aside in order for the plaintiff to test the defendant's contentions."). But that appears to be a risk Honeywell is willing to take and, as a result,

---

3. One can certainly debate the merits of allowing a particular privilege to apply when it might impede the "normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)). But truth-seeking is not the *only* interest or principle at stake in litigation; if it was, there would be no need for any privileges, the very purpose of which is to protect against the disclosure of information notwithstanding its relevance. Thus, the cost of any privilege is the possibility that cases will be decided on less than all of the relevant information known to the parties, though that cost is tempered by attorneys' ethical obligations of candor to the court which preclude them from making representations (or eliciting testimony) they know to be untrue. Here, the common law has developed a mostly sacrosanct privilege against disclosing attorney-client protected communications, and the Sixth Circuit has clearly articulated the narrow circumstances in which a party can be said to have impliedly waived that privilege. For the reasons discussed herein, the Court finds no basis for concluding that Honeywell has waived the privilege.

it has preserved its privilege with regard to the materials at issue. *See e.g. U.S. v. Capt'l Tax. Corp.*, No. 04–4138, 2011 WL 589615, *6–7, 2011 U.S. Dist. LEXIS 13242, *19–20 (N.D.Ill. Feb. 10, 2011) (acknowledging government's decision to not disclose privileged material may hamper its ability to prove its case by limiting types of evidence and argument available to it, but finds it "is a risk the government may be assuming by raising the ... privileges."); *Williams v. Sprint/United Management Co.*, 464 F.Supp.2d 1100 (D.Kan.2006) (finding no waiver where defendant asserted it would not rely on evidence of consultation with counsel for purposes of good faith defense where such reliance would open door to inquiry by plaintiff that might cause defendant to assert privilege).

Similarly, with regard to Honeywell's fraudulent concealment claim, the UAW may be able to argue that Honeywell's apparent failure to consult with counsel as to the validity of the UAW's representations is evidence of a lack of due diligence. At the hearing, Honeywell reiterated to the Court that it intended to rely solely on the UAW's representations to it and others, as well as the parties' long bargaining history, to support its due diligence claim. Whether this evidence will be enough to meet its burden of proving due diligence is an issue upon which the Court does not pass. Since Honeywell intends to meet its burden of proof on the issue of due diligence without disclosing privileged information, at-issue waiver does not apply here. *See Capt'l Tax.*, 2011 WL 589615, at *6–7, 2011 U.S. Dist. LEXIS 13242 at *19–20. Unless and until it appears otherwise, Honeywell has not waived the attorney-client privilege with regard to the communications on its privilege log and the UAW's motion to compel the production of these communications will therefore be denied.

## III. CONCLUSION

For the foregoing reasons, the UAW's motion to compel [63] is **DENIED**.

**IT IS SO ORDERED.**